IN THE UNITED STATES DISTRICT COURT OF DELEWARE

CIVIL ACTION NO. _____

JURY TRIAL DEMANDED

ANTHONY PORTERFIELD    — 0 7 - 1 4 7 —
         Plaintiff

v.

CORRECTIONAL MEDICAL SERVICES (CMS), et al.,
                Defendants

COMPLAINT

FILED
MAR 1 3 2007
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

BD Scanned
IFP

Anthony Porterfield
AM-5025
SCI-Retreat
660 State Route 11
Hunlock Creek, P.A. 18621-3136

**Preliminary Statement**

This is a Civil Rights action filed by Anthony Porterfield, a state prisoner, for damages under 42 U.S.C. § 1983, alleging denial of medical care, inadequate medical care, failure to diagnose, deliberate indifference and Cruel and Unusual Punishment in violation of the **Eighth Amendment** of the United States Constitution. Plaintiff also alleges the tort of negligence.

**Jurisdiction**

1. This Honorable Court has jurisdiction over the Plaintiff's claims of violations of federal constitutional rights under 42 U.S.C. § 1331 (a) and § 1343.

2. This Honorable Court has supplemental jurisdiction over the Plaintiff's State Law tort claim under 28 U.S.C. § 1367.

**Parties**

3. Plaintiff, Anthony Porterfield, was incarcerated at Deleware Correctional Center ("DCC") during the events described in this complaint.

4. Defendant, C.O. John Doe, A.K.A. "Kneup," is a correctional officer employed at DCC. He is sued in his individual capacity.

5. Defendants Pierce and Burris are Deputy Wardens at DCC and are in charge of handling prisoner complaints and ensuring the appropriate care, custody and control of every prisoner housed at DCC. They are sued in their individual capacities.

6. Defendant Carroll is the warden at DCC and is responsible for reviewing and responding to all grievance appeals and prisoner complaints as well as the care, custody, control of all prisoners incarcerated at DCC. He is sued in his individual capacity.

7. Defendant Michael McGreanor and Lise Merson are the DCC grievance coordinators at DCC and as such are responsible for receiving, assigning investigators to investigate the grievance and to respond to said grievances. They are sued in their individual capacities.

8. Defendants Deborah Rodweller, John Rundle and Lee Anne Dunn are grievance investigators at DCC and as such are responsible for investigating and reporting their findings concerning grievances filed by prisoners. They are sued in their individual capacities.

9. Defendants Oshenka Gorden and Brenda Heddinger are members of the DCC grievance hearing committee and as such they are responsible for ruling on the grievance investigators findings. They are sued in their individual capacities.

9. Defendants Oshenka Gorden and Brenda Heddinger are members of the DCC grievance hearing committee and as such they are responsible for ruling on the grievance investigators findings. They are sued in their individual capacities.

10. Defendants Dr. Rogers, Dr. Durst, Director of Nursing Gail Eller and Registered Nurse Meggett are medical staff employed at DCC. They are sued in their individual and official capacities.

11. Defendant Christine Doe is a nurse at DCC who's last name is presently unknown to Plaintiff. She is sued in her individual and official capacities.

12. Defendant John Doe 2 is the X-Ray Technician employed at or for DCC. He is sued in his individual and official capacities.

13. Defendant Correctional Medical Services (CMS) is a Professional Corporation out of the State of Deleware that is under the employ of DCC to provide adequate medical services to the prisoners housed there. They are sued in their individual and official capacities.

14. At all times relevant hereto, Defendant have acted, and continue to act, under the color of state law.

## Facts

### Cruel and Unusual Punishment

15. On July 7, 2005, Defendant Kneupp while making a round walked by Plaintiff's cell and deliberately and callously slammed the tray slot door on Plaintiff's finger while his hand was laying on the tray slot.

16. Even though Plaintiff cried out in pain Defendant Kneupp just chuckled (laughed) and walked away.

### Denial of Adequate Medical Treatment

17. Plaintiff signed up for sick call the following morning because correctional officers would not arrange an emergency medical visit.

18. At medical Plaintiff was told that he would be fine and was given Ibuprofen and sent back to his cell.

19. On August 20, 2005 after still receiving no treatment from medical for his finger Plaintiff filed a grievance to Defendant McCreanor.

20. On September 1, 2005, Defendant Lee Anne Dunn, was assigned to investigate Plaintiff's grievance.

### Failure to Diagnose

21. Plaintiff finally had x-rays of his finger taken on September 16, 2005.

22. On September 29, 2005, Plaintiff was sent the results of the x-rays which Defendant Doe 2 claimed came back with normal findings.

### Denial of Medical Care

23. On October 3, 2005, Plaintiff went to sick call again. During this sick call the Doctor finally confirmed that Plaintiff's finger was broken.

24. After still receiving no treatment Plaintiff again went to medical on November 4, 2005 and again the doctor confirmed that Plaintiff's finger was broken.

25. In December 2005, Plaintiff was finally taken to a specialist who stated immediate surgery was required and that Plaintiff had been without treatment for far to long.

26. On January 30, 2006, Plaintiff wrote Defendant Carroll and explained to him the situation and requested his assistance in getting something done.

27. On January 30, 2006, Defendant Carroll received Plaintiff request for assistance.

28. On February 15, 2006, Plaintiff wrote to Defendant Burris explaining his situation and requesting assistance.

29. On February 17, 2006 Plaintiff was again taken to see a specialist (Dr. Richard Dushuttle) only to have him state that Plaintiff was in need of surgery and that the Prison had to approve it before anything could be done.

30. On February 21, 2006, Defendant Carroll forwarded Plaintiff January 30, 2006 letter to Defendant Pierce.

31. On February 23, 2006 Defendants McCreaner, Eller, Gordon and Heddinger held a hearing on my grievance that was filed on August 20, 2005.

32. Plaintiff was thrown out of this hearing by Defendant McCreanor who claimed that Plaintiff had an attitude.

33. The grievance was upheld claiming that treatment was being rendered.

34. On February 27, 2006, Defendant Pierce forwarded Plaintiff's request to Defendant Eller for her investigation and action.

35. On March 14, 2006, Defendant Eller, forwarded my letter dated January 30, 2006 to CMS who decided that Plaintiff's claims

-6-

were finally justified and they therefore expedited the approval of the necessary surgery on Plaintiff's finger.

36. On April 19, 2006, Plaintiff finally had the required surgery on his finger. A total of 9 months after Plaintiff's finger was broken.

37. In May 2005 Defendant Rogers instructed Plaintiff to perform select exercises with his finger.

38. A week after Defendant Rogers instruction Plaintiff was returned to the Specialist who stated that Plaintiff's finger had become infected as a result of the exercises that Defendant Rogers instructed Plaintiff to do.

39. The Specialist order that Plaintiff be placed on an IV antibiotic for the following two weeks.

40. On June 6, 2006, Plaintiff was again taken to Dr. Dushuttles office and Plaintiff was informed by his assistant that Plaintiff's finger was still badly infected and that it may need amputated.

41. On June 7, 2006, Plaintiff was seen by Defendant Durst informed Plaintiff that Dr. Dushuttle did not know what he was talking about when he said that Defendant Rogers should not have ordered Plaintiff to perform exercises with my finger after the

operation.

42. On June 6, 2006 when seen by Dr. Dushuttle he ordered medication in the form of Keflef.

43. On June 7, 2006, the Defendants refused Plaintiff the Keflef ordered by Dr. Dushuttle and instead gave Plaintiff Ancef.

44. While Plaintiff was housed in the infirmary on the IV Plaintiff's IV tubing was not changed for five days (June 10-15, 2006) when it was ordered to be changed every 3 days.

45. On June 22, 2006, Plaintiff was taken to Dr. Dushuttles office for the purpose of having a pick line placed in his arm. This did not occur and instead an incision was made in order to drain Plaintiff's finger and a clean bandage was placed on it.

46. On June 27, 2006, Plaintiff complained that Defendant Nurses were not changing Plaintiff's bandages.

47. On June 29, 2006, Defendant Christine Doe was asked to change my bandage and she again refused to change it. Plaintiff's bandage had not been changed since June 22, 2006.

48. On June 30, 3006, Plaintiff was taken to Kent General where he had the pick line inserted and his bandages changed.

49. On July 3, 2006, while hooking Plaintiff to IV tubing Defendant Christine Doe refused to flush Plaintiff's dirty catheter line claiming that there was no need to flush said line.

50. On July 6, 2006 Plaintiff was taking and given and MRI on his finger which revealed that infection in Plaintiff's finger had gone to the bone.

51. At this point it was ordered that Plaintiff remain on IV Antibiotics for six weeks and then Plaintiff would be taken to see Dr. Dushuttle again.

52. On August 11, 2006 Plaintiff was taken to see Dr. Dushuttle and his assistant took x-rays and said that a recommendation would be given to Dr. Dushuttle that Plaintiff's finger be cut off at the second knuckle.

53. On October 2, 2006, Dr. Dushuttle amputated Plaintiff's finger.

54. Defendants again refuse to change Plaintiff's dressings. On October 11, 2006, Defendant Christine Doe refused to change the dressing stating that Defendant Rogers told her not to change the dressing.

Administrative Remedies

55. Plaintiff exhausted all administrative remedies to the

fullest extent possible prior to his being transferred from Delaware to Pennsylvania and therefore could not fully complete administrative remedies in the form of all appeals.

56. Therefore the purposes of § 1983 purposes Plaintiff's Administrative Remedies are Exhausted.

Personal Involvement

57. Paragraphs 15-54 are hereby incorporated by reference as though fully set forth at length.

58. The Defendants in this action all had direct knowledge of the Plaintiff's injury and the seriousness of said injury and either blatently refused to assist Plaintiff and/or had knowledge of the seriousness of Plaintiff injury and deliberately ignored it and therefore refused to assist Plaintiff.

59. Defendant CMS is liable in that they are informed of all injuries that take place within an institution and in the interest of attempting to save money ignored Plaintiffs injury. Plaintiff has information that would further suggest a pattern of instructing their staff at prisons to treat everyone by giving them only ibuprofen which will establish official liability as well as further assist Plaintiff in showing individual liability.

Cruel and Unusual Punishment

60. Paragraphs 15-54 are hereby incorporated by reference

as though fully set forth at length.

61. Cruel and Unusual Punishment is defined as Punishment that is torturous, degrading... or otherwise shocking to the moral sense of the community.

62. In this action Plaintiff's finger was broken by one of the Defendants and the remaining Defendants refused to assist Plaintiff in getting his finger fixed.

63. The actions of the Defendants in this case caused Plaintiff to have to endure living with a broken finger and no medical treatment or inadequate treatment for a period of 1 year and 3 months until his finger was so bad that the doctor had to amputate it.

64. This type of action on the part of the Defendant is torturous, inhuman and shocking to the moral sense of the community. Therefore, this constitutes Cruel and Unusual Punishment.

Wanton Unecessary Infliction of Pain

65. Paragraphs 15-54 are hereby incorporated by reference as though fully set forth at length.

66. Plaintiff's was unnecessarily placed in pain when Defendant Doe, AKA Kneup, broke Plaintiff finger.

67.  Plaintiff was then forced to endure this pain by the remaining Defendants refusal to correct Plaintiff's broken finger for over a year.

68.  Defendant's refusal to properly alleviate Plaintiff's pain and fix his broken finger ultimately caused Plaintiff to require surgery on said finger and the final stage he was forced to have his finger amputated.

Failure to Diagnose

69.  Paragraphs 15-54 are hereby incorporated by reference as though fully set forth at length.

70.  It is clear that any competent Doctor knows what and how to diagnose a broken bone.

71.  Yet in this case Defendants initially failed to do so.

72.  When Defendants finally agreed to take x-rays two months after Plaintiff's finger was broken they told Plaintiff that the x-rays came back with normal findings.

73.  Then 4 days later when Plaintiff complained again Defendants finally confirmed that Plaintiff's finger was broken.

74.  Defendants clearly once the decided to look at Plaintiff's finger in the form of taking x-rays failed to

diagnose Plaintiff's injury while the injury got worse.

### Denial of Medical Care

75. Paragraphs 15-54 and 56-74 are hereby incorporated by reference as though fully set forth at length to make paragraph 75.

76. It is clear that Plaintiff was totally denied medical care from the time that his finger was broken until the months after Defendants finally diagnosed Plaintiff's finger as broken.

77. A total of 5 passed with the Plaintiff being denied treatment for his broken finger.

78. The Denial of medical care by the Defendant clearly contributed in great part to the ultimate amputation of Plaintiff's finger.

### Inadequate Medical Care

79. Paragraphs 15-54 and 56-79 are hereby incorporated by reference as though fully set forth at length to make Paragraph 79.

80. Once Defendants opted to finally provide Plaintiff with medical treatment it was wholly inadequate.

81. Plaintiff was taken to a Specialist who said that

Plaintiff's finger required immediate surgery.

82. This surgery did not occur until 4 months after the specialist said that immediate surgery was necessary.

83. Once the surgery was conduct Defendants refused to change Plaintiff's dressings allowing the infection that cost Plaintiff his finger to get worse.

84. Defendants refused to flush catheter lines and change IV tubes to keep conditions sanitary in order to allow Plaintiff to properly heal.

85. It is therefore clear that once Defendants finally choose to provide any medical care to Plaintiff that care was wholly inadequate and greatly contributed to the ultimate amputation of Plaintiff's finger.

Deliberate Indifference to a Serious Medical Need

86. Paragraphs 15-54 and 56-85 are hereby incorporated by reference as though fully set forth at length to make Paragraph 86.

87. Each of the named Defendants in this action was fully aware and knew that Plaintiff's finger was broken by either Direct means or through the reports and complaints of the

Plaintiff.

88. Defendants chose to refuse Plaintiff the medical attention that he was in desperate need of.

89. Defendants when the finally acknowledged that Plaintiff was in need of care the Defendants choose to provide Plaintiff inadequate care (i.e. refusing to change bandages, waiting months to provide a surgery that was required immediately, etc...).

90. Defendants actions were the proximate cause of Plaintiff being forced to suffer severe pain for over a year and ultimately to the cause of Plaintiff's finger being amputated.

91. If Defendants in this case would have provide the necessary medical care to fix Plaintiff's finger in a timely manner Plaintiff would still have his finger to this day.

91. It is therefore clear that the Defendants were deliberately indifferent to Plaintiff's serious medical needs which caused Plaintiff to suffer severe pain for over a year and ultimately resulted in Plaintiff's finger being amputated.

Claims for Relief

92. The Actions of the Defendant Doe, A.K.A. Kneup, in

maliciously and sadistically slamming Plaintiff's finger in the tray slot of his cell door constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

93. Defendants denial of medical care, failure to diagnose and inadequate medical care either directly or by knowing about it and failing to act to assist Plaintiff, which caused Plaintiff to live in pain for over a year and to ultimately the necessity to have his finger amputated, constitutes deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment of the United States Constitution.

94. The knowledge Defendant CMS had concerning Plaintiff's injury and their failure to get Plaintiff the assistance that he direly needed constitutes deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment of the United States Constitution.

95. Defendant CMS's failure to provide adequate medical care is believed through information to be a pattern thereby making them officially responsible and individually responsible for the deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment of the United States Constitution.

Relief Requested

WHEREFORE, Plaintiff requests that the Honorable Court grant the following relief:

A. Grant Compensatory Damages in the following amounts:

1. $500,000 against Defendant Doe, A.K.A. "Kneup", for the physical and emotional injury associated with his slamming Plaintiff's finger in the tray slot of the cell door.

2. $750,000 jointly and severally against Defendant Doe, A.K.A. Kneup, Pierce, Burris, Carroll, McGreanor, Merson, Rodweller, Rundle, Dunn, Gorden, Heddinger, Rogers, Durst, Eller, Meggett, Christine Doe, and John Doe 2, for the pain and suffering that Plaintiff was forced to endure for more than a year leading up to Plaintiff's finger being amputated.

3. $5,000,000 against Defendant CMS, for pain and suffering that Plaintiff was forced to endure by Defendant CMS policy and actions.

B. Award Punitive Damages in the following amounts:

1. $500,000 each against Defendants Doe, A.K.A. Kneup,

      Pierce, Burris, Carroll, McGreanor, Merson, Rodweller, Rundle, Dunn, Gorden, Heddinger, Rogers, Durst, Eller, Meggett, Christine Doe, John Doe 2;

2. $5,000,000 against Defendant CMS.

C. Award Costs associated with this action.

D. Award such further relief as it may appear that Plaintiff is entitled.

Respectfully Submitted,

Date: 8 March 2007

*Anthony Porterfield*

Anthony Porterfield

AM-5025

SCI-Retreat

660 State Route 11

Hunlock Creek, P.A. 18621-3136

Name Anthony Porterfield
Number AM-5025
660 State Route 11
Hunlock Creek, PA 18621
INMATE MAIL PA
DEPT. OF CORRECTIONS





Peter T. Dalleo
District clerk
844 N. King St. Room 4209
Lockbox 18
Wilmington, DE 19801