**IN THE UNITED STATES DISTRICT**
**COURT OF DELAWARE**

|  |  |
|---|---|
| ANTHONY PORTERFILED, | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : |
| CORRECTIONAL MEDICAL SERVICES | : |
| (CMS); DR. DALE RODGERS; DR. DURST; | : |
| GAIL ELLER; NURSE MEGGETT; | : |
| CORRECTIONAL OFFICER KNEUPP; | : |
| NURSE CHRISTINE ROE, individually and | : |
| as employees and agents for the Correctional | : |
| Medical Services, | : |
| | : |
| Defendants. | : |

JURY TRIAL DEMANDED

C.A. # 07-cv-147

## AMENDED COMPLAINT

### I.    JURISDICTION

1.    This action is brought pursuant to 42 U.S.C. §§ 1331 and 1343(1)(3)(4) and the aforementioned statutory provision.

### II.    PARTIES

2.    Plaintiff, Anthony Porterfield is an adult male who was at all times relevant to this Complaint, incarcerated at the Delaware Correctional Center, located in the State of Delaware.

3.    Defendant Correctional Medical Services (CMS), a corporation with offices and business address in the State of Delaware, is and was at all times relevant to this Complaint and at all times relevant hereto operated under the color of state law in creating and maintaining medical service provider, was the employer of all Defendants and had the responsibility of

1

adopting policies, implementing procedures and practices which would provider of medical services for the Delaware Correctional Center.

4.      Defendant Rodgers, is a medical physician, is and was at all times relevant to this Complaint an employee and/or agent of CMS and part of the medical staff employed by the Delaware Correctional Center and acting under the color of state law. He is being sued in both his individual and official capacities.

5.      Defendant Durst, is a medical physician, is and was at all times relevant to this Complaint an employee and/or agent of CMS and part of the medical staff employed by the Delaware Correctional Center and acting under the color of state law. He is being sued in both his individual and official capacities.

6.      Defendant Eller, is the Director of Nursing, is and was at all times relevant to this Complaint an employee and/or agent of CMS and part of the medical staff employed by the Delaware Correctional Center and acting under the color of state law. She is being sued in both her individual and official capacities.

7. Defendant Meggett, is a nurse, is and was at all times relevant to this Complaint an employee and/or agent of CMS and part of the medical staff employed by the Delaware Correctional Center and acting under the color of state law. She is being sued in both her individual and official capacities.

8.      Defendant Kneupp, is a correctional officer, is and was at all times relevant to this Complaint an employee and/or agent of the Delaware Correctional Center and acting under the color of state law. He is being sued in both his individual and official capacities.

9.      Defendant Roe, is a nurse, is and was at all times relevant to this Complaint an employee and/or agent of the Delaware Correctional Center and/or CMS and acting under the

2

color of state law. She is being sued in both her individual and official capacities.

## III.    FACTS

10.    On July 7,2005, Defendant Kneupp,   while making his rounds, walked by Plaintiff's cell and without warning or cause deliberately and wantonly slammed the tray slot door to Plaintiff's cell on his finger while Plaintiff's hand was lying on the tray slot.

11.    Plaintiff cried out in pain while Defendant Kneupp chuckled and walked away.

12.    On July 8, 2005, the Plaintiff signed up for sick call because the correctional officers refused to schedule Plaintiff for an emergency medical visit.

13.    At medical after being examined, Plaintiff was informed that he was fine and was given Ibuprofen for the pain and returned back to his cell.

14.    On August 20, 2005 after repeated requests for treatment to his finger and receiving none, Plaintiff submitted a grievance to Michael McGreanor, a grievance coordinator at Delaware Correctional Center.

15.    On September 1, 2005, Lee Anne Dunn, a grievance investigator for the Delaware Correctional Center was assigned to investigate the allegations contained in Plaintiff's grievance.

16.    On September 16, 2005, x-rays were taken of Plaintiffs finger.

17.    On September 29, 2005, Plaintiff obtained the results of the x -rays whereby Plaintiff was informed that the findings were normal.

18.    On October 3, 2005, the Plaintiff again went to sick call because of his injured finger where the doctor confirmed that his finger was broken.

19.    Plaintiff still received no treatment for his broken finger and on November 4, 2005 he again went to medical where the doctor again confirmed that his finger was broken.

20.    In December 2005, the Plaintiff was finally sent out to see a specialist who

3

informed Defendants that since Plaintiff was without medical treatment for so long with his broken finger, he required immediate surgery.

21.    On January 30, 2006, the Plaintiff wrote to Warden Carroll, the warden at the Delaware Correctional Center informing him about his medical condition and requested his assistance in getting the proper medical treatment.

22.    On January 30, 2006, Warden Carroll received Plaintiff's plea for medical care.

23.    On February 15, 2006, the Plaintiff wrote to Deputy Warden Burris informing him about his medical condition and requested his assistance in getting the proper medical treatment.

24.    On February 17, 2006 the Plaintiff was again taken to see Dr. Richard Dushuttle, a second specialist, who reiterated Plaintiff s need for immediate surgery, but informed the Plaintiff that Plaintiff would not receive the surgery until it was approved by Defendants.

25.    On February 21, 2006, Warden Carroll forwarded Plaintiff's January 30, 2006 letter to Deputy Warden Pierce.

26.    On February 23, 2006 Defendant Eller and Grievance Coordinator McCreaner and Grievance Rearing Committee Members Gordon and Reddinger held a hearing regarding Plaintiff's August 20,2005 grievance request.

27.    Plaintiff was escorted out of the grievance after Grievance Coordinator McCreanor stated that the Plaintiff had "an attitude".

28.    Plaintiff was subsequently informed that the grievance panel concluded that the medical treatment he was receiving was adequate.

29.    On February 27, 2006, Deputy Warden Pierce forwarded Plaintiff's January 30, 2006 grievance request to Defendant Eller for her investigation and action.

30.     On March 14, 2006, Defendant Eller forwarded Plaintiff's January 30, 2006 grievance request to Defendant CMS. After review, Defendant CMS approved Plaintiff's necessary surgery to his finger.

31.     On April 19, 2006, nine (9) months after breaking his finger, Plaintiff was operated on. Two (2) screws were inserted in Plaintiffs finger.

32.     Immediately following surgery, in May of 2005, Defendant Rodgers began Plaintiff on a course of treatment consisting of select physical therapy exercises to his injured finger.

33.     A week after Defendant Rodgers ordered physical therapy, Plaintiff returned to Dr. Dushuttle who informed the Plaintiff that his finger was badly infected due to the physical therapy Defendant Rodgers had ordered.

34.     Dr. Dushuttle ordered that the Plaintiff be placed on an IV antibiotic for the following two (2) weeks.

35.     On June 6, 2006, the Plaintiff returned to Dr. Dushuttle and was informed that Plaintiff's finger was still badly infected which may required to be amputated. Dr. Dushuttle ordered that the Plaintiff be placed on the medication Keflef.

36.     Plaintiff submitted a grievance informing the Defendants that his finger was badly infected.

37.     On June 7, 2006, the Plaintiff was seen by Defendant Durst and informed that Dr. Dushuttle did not know what he was talking about when Dr. Dushuttle informed the Plaintiff that Defendant Rodgers course of treatment of physical therapy so soon after the operation was wrong. Instead of giving Plaintiff Keflef as Dr. Dushuttle ordered, the Defendants placed Plaintiff on a different medicine, Ancef.

38.    After being placed on the IV as ordered by Dr. Dushuttle, from June 10, 2006 to June 15,2006, the Defendants failed to change Plaintiffs IV tubing as required.

39.    On June 22, 2006, Plaintiff was again taken to be examined by Dr. Dushuttle who made an incision in Plaintiff's finger to drain it and a clean bandage was placed on it.

40.    On June 27, 2006, the Plaintiff complained that the Defendant nurses were not changing his bandages as required.

41.    On June 29, 2006, the Plaintiff requested that Defendant Christine Roe change his bandage that had not been changed since his visit to Dr. Dushuttle on June 22, 2006. Defendant Roe failed and refused to change his bandage.

42.    On June 30, 2006, the Plaintiff was transported to Kent General Hospital where he had a pick line inserted in his arm and his bandage was finally changed.

43.    On July 3, 2006, while hooking Plaintiff to the IV tubing, defendant Christine Roe refused to flush Plaintiff s dirty catheter line claiming that there was no need to do so.

44.    On July 6, 2006, the Plaintiff was taken and given an MRI of his finger that revealed that the infection in Plaintiff's finger had spread to his bone.

45.    Defendants ordered that the Plaintiff remain on the IV antibiotics for an additional six (6) weeks where at the end of that period of time, he would be returned to Dr. Dushuttle to be examined.

46.    On August 11, 2006 the Plaintiff was taken to be examined by Dr. Dushuttle where x-rays were taken of Plaintiffs finger. Dr. Dushuttle informed the Plaintiff that the infection was so bad that Plaintiff s finger would be required to be amputated at the second knuckle.

47.    On August 23, 2006, Plaintiff submitted a medical grievance request requesting

6

that an investigation be done to determine why Defendant Rodgers ordered therapy to Plaintiff's

finger so soon after the operation. The investigation was assigned to Investigator Rodweller.

48.    On October 2, 2006, after nearly fifteen (15) months after Defendant Kneupp

broke Plaintiffs finger, the finger was amputated.

49.    Following the operation, Defendant Christine Roe continued to refuse to change

Plaintiffs bandage. Defendant Roe informed the Plaintiff that Defendant Rodgers ordered the

nurse not to change the dressing.


## IV. ADMINISTRATIVE REMEDIES

50.    The Plaintiff has exhausted all administrative remedies to the fullest extent

possible while incarcerated at the Delaware Correctional Center.


### FIRST CAUSE OF ACTION
### EXCESSIVE FORCE
### (Porterfield v Kneupp)

51.    The allegations set forth in paragraphs 1-50 inclusive, are incorporated herein as

if fully set forth.

52.    The foregoing conduct of the Defendant, acting under the color of state law, was

undertaken in concert and conspiracy and as part of an effort to unlawfully assault and otherwise

deprive Plaintiff of his civil and constitutional rights including Plaintiffs rights, privileges and

immunities under the Eighth and Fourteenth Amendments to the United States Constitution in

violation of 42 U.S.C. § 1983.

53.    At no time did Plaintiff strike, attempt to strike or intend to strike the Defendant

correctional officer or any other correctional officer. At no time did Plaintiff harass, threaten,

resist arrest in any way, commit any illegal acts or engage in any conduct, which in any way justified the actions of the Defendant correctional officer.

54.    As a direct and proximate result of the Defendant's actions, Plaintiff suffered serious physical injury, including a broken finger.

55.    As a direct and proximate result of the Defendant's actions, Plaintiff suffered and continues to suffer serious mental anguish, psychological and emotional distress, and pain and suffering, some or all of which may be permanent.

56.    As a direct and proximate result of the Defendant's actions, Plaintiff was subjected to physical and verbal abuse without just or probable cause.

57.    At no time did Plaintiff pose a threat to the Defendant or to others.

58.    The actions of the Defendant were undertaken in a menacing and arbitrary manner, designed to cause Plaintiff fear, distress and embarrassment.

59.    The acts of the Defendant were committed willfully, wantonly, maliciously, intentionally, outrageously, deliberately and/or by conduct so egregious as to shock the conscience.

60.    The acts and omissions of the Defendant were committed without cautious regard to due care, and with such wanton and reckless disregard of the consequences as to show Defendant's indifference to the danger of harm and injury.

61.    The individual Defendant conspired to inflict harm on Plaintiff and deprive him of his constitutional rights.

62.    The Defendant made statements to officials and others in order to conceal his unlawful and unconstitutional conduct and in an attempt to deny Plaintiff access to the Courts and to due process.

63.     The Defendant engaged in the aforesaid conduct for the purpose of violating Plaintiffs constitutional rights by subjecting him to unreasonable use of force or excessive force and to due process.

64.     As a direct and proximate result of the Defendant's illegal and unconstitutional actions, Plaintiff suffered pain, fear, anxiety, embarrassment, loss of liberty, confinement, physical injuries, severe emotional trauma, and the loss of the enjoyment of life, all to his great detriment and loss.


### SECOND CAUSE OF ACTION
### DENIAL OF MEDICAL TREATMENT
**(Porterfield v. Dr. Rodgers, Dr. Durst, Eller, Meggett, Roe)**

65.     The allegations set forth in paragraphs 1-64 inclusive, are incorporated herein as if fully set forth.

66.     The foregoing conduct of the Defendants, acting under the color of state law, was undertaken in concert and conspiracy and as part of an effort to unlawfully deny Plaintiff medical attention and otherwise deprive Plaintiff of his civil and constitutional rights including Plaintiff s rights, privileges and immunities under the Eighth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983.

67.     As a direct and proximate result of the Defendants' actions, Plaintiff suffered serious physical injury, including a broken finger, infected finger and amputated finger.

68.     As a direct and proximate result of the Defendants' actions, Plaintiff suffered and continues to suffer serious mental anguish, psychological and emotional distress, and pain and suffering, some or all of which may be permanent.

69.     As a direct and proximate result of the Defendants' actions, Plaintiff was

subjected to physical abuse without just or cause.

70.    At all times Plaintiff requested medical treatment for his obvious injuries.

71.    The actions of Defendants were undertaken in a menacing and arbitrary manner, designed to cause Plaintiff fear, distress and embarrassment.

72.    The acts of Defendants were committed willfully, wantonly, maliciously, intentionally, outrageously, deliberately and/or by conduct so egregious as to shock the conscience.

73.    The acts and omissions of the undivided Defendants were committed without cautious regard to due care, and with such wanton and reckless disregard of the consequences as to show Defendants' indifference to the danger of harm and injury.

74.    The individual Defendants conspired to inflict harm on Plaintiff and deprive him constitutional rights.

75.    Defendants engaged in the aforesaid conduct for the purpose of violating Plaintiff s constitutional rights by depriving Plaintiff of property and liberty without due process of law, subjecting Plaintiff to injury when they denied him medical treatment.

76.    As a direct and proximate result of the Defendants' illegal and unconstitutional actions, Plaintiff suffered pain, fear, anxiety, embarrassment, physical injuries, severe emotional trauma, and the loss of the enjoyment of life, all to his great detriment and loss.

77.    As a direct and proximate cause of the Defendants' illegal and unconstitutional actions, Plaintiff suffered and continues to suffer financial loss and deprivation of other liberty interests to his great financial detriment and loss.

### THIRD CAUSE OF ACTION
### MONELL CLAIMS
### (Porterfield v. Correctional Medical Services)

78.     The allegations set forth in paragraphs 1-77 inclusive, are incorporated herein as if fully set forth.

79.     As a direct and proximate result of Defendants' above described unlawful and malicious conduct, committed under the color of state law, and while acting in that capacity, the Defendants deprived Plaintiff of the equal protection of the laws and Plaintiff s rights, privileges and immunities under the laws and the Constitution of the United States, Plaintiffs right to be free from excessive force, right to adequate medical care, to be secure in one's person and property, to access to the Courts, and to due process and equal protection of the law, all to Plaintiffs great detriment and loss. As a result, Plaintiff suffered grievous harm, in violation of his rights under the laws and Constitution of the United States in particular the Eighth and Fourteenth Amendments thereof, and 42 U.S.C. § 1983.

80.     As a direct and proximate result of the acts and omissions of Defendants, Plaintiff was forced to endure great pain and mental suffering, and was deprived of physical liberty and adequate medical care, all to Plaintiffs great detriment and loss.

81.     The Correctional Medical Services permitted, encouraged, tolerated, ratified and was deliberately indifferent to a pattern, practice and custom of:

     a.     Failure to provide adequate medical care to inmates suffering from a serious medical condition;

     b.     Failure to properly diagnosis an inmate's serious medical condition;

     c.     Staffing medical personnel unfit to provide proper medical attention and care; and

     d.     Failure of medical personnel to prevent, deter, report or take action against

the unconstitutional actions of other medical personnel of CMS that violate the constitutional rights of inmates as presented herein.

82.    Defendant, Correctional Medical Services was deliberately indifferent to the need to:

a.    Provide proper medical care to inmates with serious medical conditions;

b.    Monitor medical personnel whom it knew or should have known were failing to provide proper medical treatment to inmates with serious medical conditions;

c.    Train its medical personnel in the appropriate exercise of medical procedures;

d.    Facilitated, encouraged, tolerated, ratified, and/or was deliberately indifferent to the needs of inmates with serious medical conditions regardless of financial constraints, and

e.    Failure to properly train, supervise and discipline medical personnel who do not follow proper medical protocol.

83.    The Correctional Medical Services was deliberately indifferent to the need for more or different training, supervision, investigation or discipline in the areas of:

a.    Properly identifying serious medical conditions;

b.    Exercise of their medical knowledge; and

c.    Properly medically treat inmates with serious medical needs.

84.    The Correctional Medical Services failed to properly sanction or discipline medical personnel, who are aware of and conceal and/or aid and abet violations of constitutional rights of inmates by other medical personnel, thereby causing and encouraging medical staff, including the Defendant doctors and nurses in this case, to violate the rights of inmates such as

12

Plaintiff.

85.    The foregoing acts, omissions, systemic deficiencies and deliberate indifference to the danger or harm to inmates like the Plaintiff and the need for more or different training, investigation and discipline are policies and customs of the Correctional Medical Services and have caused medical personnel, including Defendant doctors and nurses in this case, to believe that they can violate the rights of inmates, with impunity, including the use of fraud and falsehood and to believe that such conduct would be honestly and properly investigated, all with the foreseeable result that medical staff are more likely to violate the constitutional rights of inmates.

86.    The actions of all Defendants, acting under the color of state law and/or in concert or conspiracy with each other, deprived Plaintiff of his rights, privileges and immunities under the laws and Constitution of the United States, in particular, the rights to be secure in one's person and property, to be free from excessive use of force, failure to provide proper medical attention and care and to due process of law.

87.    Defendants, Correctional Medical Services and the individual named Defendants, acting in concert and conspiracy with each other, have by the aforementioned actions deprived Plaintiff of his constitutional and statutory rights.

88.    By these actions, all Defendants have deprived Plaintiff of his rights secured by the Eighth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983.

## PUNITIVE DAMAGES

89.    Plaintiff re-alleges paragraphs 1-88 of this complaint as though fully set forth

herein.

90.     The conduct of the individual Defendants were outrageous, malicious, wanton, willful, reckless and intentionally designed to inflict harm upon Plaintiff.

91.     AI; a result of the acts of the individual Defendants alleged in the preceding paragraphs, Plaintiff is entitled to punitive damages as to each cause of action.

## JURY DEMAND

92.     Plaintiff demands a jury trial as to each Defendant and as to each count.

WHEREFORE, Plaintiff requests the following relief:

   a.     Compensatory damages;

   b.     Punitive damages;

   c.     A declaratory judgment that the practices and policies complained of are unconstitutional;

   d.     Reasonable attorney's fees and costs; and

   e.     Such other and further relief as appears reasonable and just.

DATED:  June 20, 2007          /s/   Micheal Pileggi_____
                               **MICHAEL PILEGGI**
                               437 Chestnut Street, Suite 905
                               Philadelphia, PA 19106
                               P: 215-627-8516
                               F: 215-627-5105
                               E-mail:  Pil423@aol.com