**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ANTHONY PORTERFIELD, | **:** | CIVIL ACTION NO.: 07-147-SLR |
| | **:** | |
| Plaintiff, | **:** | |
| | **:** | |
| v. | **:** | JURY TRIAL DEMANDED |
| | **:** | |
| CORRECTIONAL MEDICAL SERVICES | **:** | |
| INC. (CMS), et al., | **:** | |
| | **:** | |
| Defendants. | **:** | |

**MOTION OF DEFENDANTS, CORRECTIONAL MEDICAL SERVICES, INC., DR.
DALE RODGERS AND DR. DURST, FOR SUMMARY JUDGMENT**

Defendants, Correctional Medical Services, Inc., Dr. Dale Rodgers and Dr. Durst, by and

through their attorneys, hereby move for summary judgment for the reasons set forth in the

accompanying Memorandum of Points and Authorities.

WHEREFORE, defendants, Correctional Medical Services, Inc., Dr. Dale Rodgers and

Dr. Durst, respectfully move this Honorable Court to enter the attached Order, granting their

Motion for Summary Judgment.


MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN


BY:   */s/ Kevin J. Connors*
    Kevin J. Connors, Esquire – I.D. # 2135
    1220 N. Market Street, 5th Floor
    P.O. Box 8888
    Wilmington, DE  19899
    (302) 552-4302
    Attorney for Defendants,
    Correctional Medical Services, Inc.,
    Dr. Dale Rodgers and Dr. Durst


**DATED:  July 31, 2008**
15/649591.v1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ANTHONY PORTERFIELD, | : | CIVIL ACTION NO.: 07-147-SLR |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| CORRECTIONAL MEDICAL SERVICES | : | |
| INC. (CMS), et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANTS,**
**CORRECTIONAL MEDICAL SERVICES, INC., DR. DALE RODGERS AND DR.**
**DURST, IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants, Correctional Medical Services, Inc., Dr. Dale Rodgers and Dr. Durst,

through their undersigned counsel, hereby respectfully move this Honorable Court to enter the

attached Order, granting defendants' Motion for Summary Judgment and, in support thereof, aver

as follows:

**I.     STATEMENT OF FACTS AND PROCEDURAL POSTURE**

Plaintiff, a prisoner incarcerated at Delaware Correctional Center ("DCC"), filed a

Complaint under 42 U.S.C. § 1983, on March 13, 2007.  D.I. 2.  Among others, Correctional

Medical Services, Inc. ("CMS"), Dr. Dale Rodgers and Dr. Durst, were named as defendants.

CMS is a private corporation that has provided medical care to Delaware inmates since July 1,

2005.[1]  Plaintiff amended his Complaint on  June 21, 2007.  D.I. 14.  Plaintiff alleges that CMS

was the medical service provider and the employer of all Defendants, who "had the responsibility

of adopting policies, implementing procedures and practices which would provider of medical

services for the Delaware Correctional Center."  D.I. 14 at ¶ 3.  Essentially, plaintiff claims that

his left index finger was broken while incarcerated and due to the lack of medical treatment his

---

[1] Prior to July 1, 2005, CMS provided medical care to Delaware inmates from July 1, 2000 until June 30, 2002.

finger had to be amputated.  In paragraphs 10 through 49 of the Amended Complaint, plaintiff alleges a series of occurrences or activities with respect to the alleged injury to his left index finger.

Plaintiff claims that on July 7, 2005, defendant Kneupp slammed the tray slot door to plaintiff's cell on plaintiff's finger.  D.I. 14 at ¶ 10.  On July 8, 2005, plaintiff signed up for sick call because the correctional officers refused to schedule him for an emergency medical visit.  D.I. 14 at ¶ 12.  Plaintiff was examined by medical who indicated that he was fine.  D.I. 14 at ¶ 13.  He was given Ibuprofen for the pain.  D.I. 14 at ¶ 13.

On August 20, 2005, plaintiff allegedly submitted a grievance to Michael McGreanor, a grievance coordinator at Delaware Correctional Center.  D.I. 14 at ¶ 14.  On September 1, 2005, Lee Anne Dunn, a grievance investigator for the Delaware Correctional Center was assigned to investigate the allegations contained in plaintiff's grievance.  D.I. 14 at ¶ 15.

On September 16, 2005, x-rays were taken of plaintiff's finger.  D.I. 14 at ¶ 16.  Plaintiff obtained the results of the x-rays on September 29, 2005.  D.I. 14 at ¶ 17.  The findings were normal.  D.I. 14 at ¶ 17.

On October 3, 2005, plaintiff alleges that he went to sick call because of his injured finger.  D.I. 14 at ¶ 18.  The doctor confirmed that his finger was broken.  D.I. 14 at ¶ 18.  Plaintiff alleges that he still received no treatment for his broken finger.  D.I. 14 at ¶ 19.  On November 4, 2005, he alleges that he again went to medical where the doctor confirmed that his finger was broken.  D.I. 14 at ¶ 19.

In December 2005, plaintiff was sent to a specialist.  D.I. 14 at ¶ 20.  Plaintiff claims that he was informed that since he had been without medical treatment for so long, he required immediate surgery.  D.I. 14 at ¶ 20.

On January 30, 2006, plaintiff wrote to Warden Carroll to inform him about his medical condition and to request his assistance in getting the proper medical treatment. D.I. 14 at ¶ 21. On February 15, 2006, plaintiff wrote to Deputy Warden Burris to inform him about his medical condition and to request his assistance in getting the proper medical treatment. D.I. 14 at ¶ 23.

On February 17, 2006, plaintiff was again taken to see Dr. Richard DuShuttle who allegedly reiterated plaintiff's need for immediate surgery. D.I. 14 at ¶ 24.

On February 21, 2006, Warden Carroll forwarded plaintiff's January 30, 2006 letter to Deputy Warden Pierce. D.I. 14 at ¶ 25. On February 23, 2006, defendant Eller, Grievance Coordinator McGreanor, and Grievance Rearing Committee Members Gordon and Reddinger allegedly held a hearing regarding plaintiff's August 20, 2005 grievance request. D.I. 14 at ¶ 26. Plaintiff claims he was escorted out of the grievance hearing after Grievance Coordinator McGreanor stated that plaintiff had "an attitude". D.I. 14 at ¶ 27. Plaintiff was subsequently informed that the grievance panel concluded that the medical treatment he was receiving was adequate. D.I. 14 at ¶ 28.

On February 27, 2006, Deputy Warden Pierce forwarded plaintiff's January 30, 2006 grievance request to defendant Eller for her investigation. D.I. 14 at ¶ 29. On March 14, 2006, defendant Eller forwarded plaintiff's January 30, 2006 grievance request to CMS. D.I. 14 at ¶ 30. After review, CMS approved plaintiff's surgery to his finger. D.I. 14 at ¶ 30.

On April 19, 2006, plaintiff was operated on. D.I. 14 at ¶ 31. Two screws were inserted into plaintiff's finger. D.I. 14 at ¶ 31.

The inmate claims that immediately following surgery, in May of 2005, Dr. Dale Rodgers began him on a course of treatment consisting of select physical therapy exercises to his injured finger. D.I. 14 at ¶ 32. According to plaintiff, a week after Dr. Dale Rodgers ordered physical

therapy, he returned to Dr. DuShuttle who informed him that his finger was badly infected due to

the physical therapy.  D.I. 14 at ¶ 33.  Dr. DuShuttle ordered the plaintiff be placed on an IV

antibiotic for two weeks.  D.I. 14 at ¶ 34.  On June 6, 2006, plaintiff again returned to Dr.

DuShuttle who informed him that his finger was badly infected allegedly due to the physical

therapy Dr. Dale Rodgers ordered and amputation might be required.  D.I. 14 at ¶ 35.  Dr.

DuShuttle allegedly ordered that plaintiff be placed on Keflef.  D.I. 14 at ¶ 35.

On June 7, 2006, plaintiff was allegedly seen by Dr. Durst and placed on Ancef instead of

Keflef.  D.I. 14 at ¶ 37.

Plaintiff further claims that after being placed on the IV as ordered by Dr. DuShuttle,

from June 10, 2006 to June 15, 2006, the defendants failed to change plaintiffs IV tubing.  D.I.

14 at ¶ 38.

On June 22, 2006, plaintiff alleges he was again examined by Dr. DuShuttle who drained

plaintiff's finger and applied a clean bandage.  D.I. 14 at ¶ 39.

On June 27, 2006, plaintiff claims he complained that the nurses were not changing his

bandages as required.  D.I. 14 at ¶ 40.

On June 29, 2006, plaintiff alleges that he requested that Christine Roe change his

bandage which had not been changed since his visit to Dr. DuShuttle on June 22, 2006.  D.I. 14

at ¶ 41.  Plaintiff claims that Christine Roe refused to change his bandage.  D.I. 14 at ¶ 41.

On June 30, 2006, plaintiff was transported to Kent General Hospital where he had a pick

line inserted in his arm.  D.I. 14 at ¶ 42.  His bandage was changed.

On July 3, 2006, plaintiff claims that Christine Roe refused to flush a dirty catheter line.

D.I. 14 at ¶ 43.

On July 6, 2006, an MRI of plaintiff's finger was taken.  D.I. 14 at ¶ 44.  It allegedly revealed that an infection in plaintiff's finger had spread to his bone.  D.I. 14 at ¶ 44.

Plaintiff further claims that defendants ordered that he remain on the IV antibiotics for an additional six (6) weeks where at the end of that period of time, he would be returned to Dr. DuShuttle to be examined.  D.I. 14 at ¶ 45.

On August 11, 2006, plaintiff was examined by Dr. DuShuttle.  D.I. 14 at ¶ 46.  X-rays were taken of plaintiff's finger.  D.I. 14 at ¶ 46.  Dr. DuShuttle allegedly informed plaintiff that the infection was so bad that plaintiff's finger would be required to be amputated.  D.I. 14 at ¶ 46.

On August 23, 2006, plaintiff submitted a medical grievance requesting that an investigation be done to determine why Dr. Dale Rodgers ordered therapy to plaintiff's finger after the operation.  D.I. 14 at ¶ 47.  The investigation was assigned to Investigator Rodweller. D.I. 14 at ¶ 47.

On October 2, 2006, plaintiff's finger was amputated.  D.I. 14 at ¶ 48.

Plaintiff has provided no expert testimony to support any of these claims.

## II.    STANDARD OF REVIEW

A court may grant summary judgment only if there is no genuine issue as to any material fact and if the moving party is subject to judgment as a matter of law.[2]  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]  A fact is "material" when it "might affect the outcome of the suit under the governing law."[4] Disputes over facts which are irrelevant or unnecessary will not preclude a grant of summary judgment.[5]

---

[2] Fed. R. Civ. P. 56(c).
[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[4] *Id*.
[5] *Id*.

The initial burdens of informing the court of the basis for a motion for summary judgment and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact fall on the moving party.[6]  Once the moving party can satisfy these initial burdens, Rule 56(e) states that the nonmoving party "may not rest upon the mere allegations or denials of his [or her] pleadings, but his [or her] response…must set forth specific facts showing that there is a genuine issue for trial."[7]  However, any reasonable inferences that can be drawn from the record must be viewed in the light most favorable to the party opposing the motion.[8]

## A.    CMS CANNOT BE LIABLE FOR CONSTITUTIONAL CLAIMS ASSERTED BY PLAINTIFF

In the context of medical care, an act of a prison official only becomes a constitutional violation when it results from the "deliberate indifference to a prisoner's serious illness or injury."[9]  Thus, *Estelle* requires plaintiff to satisfy a two-prong test in order to impose liability under § 1983: i) the prisoner's medical needs must be serious; and there must be ii) deliberate indifference on the part of prison officials.[10]  The *Estelle* court has clarified this standard in that:

> an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind."  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.[11]

---

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[7] *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985)(citing Fed. R. Civ. P. 56(e)), *cert. denied*, 474 U.S. 1010 (1985).
[8] *Sorba v. Pennsylvania Drilling Co., Inc.*, 821 F.2d 200, 202-03 (3d Cir. 1987), *cert. denied*, 484 U.S. 1019 (1988).
[9] *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).
[10] *Id.*
[11] *Id.* at 105-106.

A mere difference of opinion concerning the treatment received by an inmate is not actionable under the Eighth Amendment and § 1983.  The "deliberate indifference" prong from *Estelle* is satisfied when the plaintiff alleges that the defendant acted to *deny* an inmate's reasonable request for medical treatment subjecting the prisoner to undue suffering or if medical treatment is delayed for non-medical reasons.[12]  The acts complained of must be accompanied by a "reckless disregard" of or "actual intent" to disregard a serious medical condition.[13]  Thus, a defendant's conduct does not constitute a "deliberate indifference" unless it is alleged to occur in conjunction with the requisite mental state.  Furthermore, "'*where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim*.'"[14]

Moreover, "a prisoner has no right to choose a specific form of medical treatment, so long as the treatment provided is reasonable."[15]   As the United States District Court for the District of Delaware has explained,

> An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf.[16]

In the seminal case of *Estelle*, the Supreme Court was considering a Fed. R. Civ. P. 12(b)(6) motion on appeal.  By way of factual background, the doctors diagnosed the prisoner's injury as a lower back strain and treated it with bed rest, muscle relaxants, and pain relievers.  Plaintiff-prisoner contended that more should have been done by way of diagnosis and treatment, and suggested a number of options that were not pursued.  The Court of Appeals agreed with the

---

[12] *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346-47 (3d Cir. 1987)(emphasis added).
[13] *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985).
[14] *Norris v. Frame*, 585 F.2d 1183, 1186 (3d Cir. 1978).  *See also Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)("Courts will 'disavow any attempts to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment.'")(citations omitted).
[15] *Blackston v. Corr. Med. Servs., Inc.*, 499 F. Supp. 2d 601, 605 (D. Del. 2007).
[16] *Id.* (citing *Estelle*, 429 U.S. at 107).

prisoner-plaintiff, stating: "Certainly an X-ray of [prisoner-plaintiff's] lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing."[17]   The Supreme Court found error in this portion of the holding by the Court of Appeals:

> But the question whether an X-ray – or additional diagnostic techniques or forms of treatment – is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most, it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act…The Court of Appeals was in error in holding that the alleged insufficiency of the medical treatment required reversal and remand.[18]

Thus, matters of medical decision or judgment *do not* constitute cruel and unusual punishment for the purposes of a § 1983 action.  When some care has been given, allegations of improper or inadequate treatment that was given *do not* support an Eighth Amendment claim.

In addition, in *Estelle*, the Supreme Court stated that the question of whether "additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment….[and] does not represent cruel and unusual punishment."[19]   In sum, an inmate's disagreement with prison health care providers over the proper course of treatment does not rise to the level of a constitutional violation.[20]

## 1.    THERE WERE NO POLICIES THAT DEMONSTRATE DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEED

In order to be liable in a civil rights action, a defendant must have personal involvement in the alleged wrongs.[21]   "Personal involvement" may be demonstrated through "allegations of personal direction or of actual knowledge and acquiescence."  These allegations, however, must

---

[17] *Gamble v. Estelle*, 516 F.2d 937, 941 (5th Cir. Tex. 1975).
[18] *Estelle*, 429 U.S. at 107 (1976).
[19] *Id*.
[20] See *Blackston*, 499 F. Supp.2d at 605.
[21] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)(citations omitted).

be made with appropriate particularity.[22]  CMS, a private corporation, may only be held liable for

a policy or custom that demonstrates deliberate indifference to plaintiff's serious medical needs.[23]

Plaintiff has failed to garner any evidence of any unconstitutional policy or custom of CMS that

demonstrates deliberate indifference to a serious medical need.  There is no evidence that any

unconstitutional policy or custom existed, or that any policy or custom of CMS lead to, or in any

way, caused medical personnel to fail to treat his condition with the urgency that it required.  To

the extent that plaintiff names CMS as a defendant based on the activities of its employees,

*respondeat superior* is not a viable theory of liability under 42 U.S.C. § 1983.[24]

Plaintiff has failed to allege a CMS policy or custom that demonstrates deliberate

indifference to a serious medical need.  More importantly, plaintiff has failed to garner any

evidence that could lead to an inference that such a policy or custom existed.  CMS is entitled to

judgment as a matter of law.

### 2.    THERE IS NO CONDUCT ON BEHALF OF CMS THAT DEMONSTRATES DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEEDS[25]

An official's denial of an inmate's reasonable requests for medical treatment constitutes

deliberate indifference if such denial subjects the inmate to undue suffering or a threat of

tangible residual injury.[26]  Deliberate indifference may also be present if necessary medical

treatment is delayed for non-medical reasons, or if an official bars access to a physician capable

of evaluating a prisoner's need for medical treatment.[27]  However, an official's conduct does not

---

[22] *Id.*

[23] *Miller v. Correctional Medical Systems, Inc.*, 802 F. Supp. 1126 (D. Del. 1992), *citing Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

[24] *Id.*

[25] At all times, CMS maintains it cannot be liable to plaintiff under a theory of *respondeat superior. See Monell v. Dept. of Social Services*, 436 U.S. 658, 691 (1978)

[26] *See Monmouth County Correctional Inst. Inmates*, 834 F.2d 326, 346 (3d Cir. 1987)(quoting *Pace v. Fauver*, 479 F.Supp. 456, 458 (D.N.J. 1979)).

[27] *See id.* at 347.

constitute deliberate indifference unless it is accompanied by the requisite mental state.

Specifically, "the official [must] know … of and disregard … an excessive risk to inmate health

and safety; the official must be both aware of facts from which the inference can be drawn that a

substantial risk of serious harm exists, and he must also draw the inference."[28]  Plaintiff may

demonstrate the official had knowledge of the risk through circumstantial evidence and "a fact

finder may conclude that a[n] … official knew of a substantial risk from the very fact that the

risk was obvious."[29]  Plaintiff has failed to produce any medical evidence to support his claim of

deliberate indifference.  In fact, the record indicates the opposite, that plaintiff was receiving

appropriate care with respect to his left index finger.  By his own pleadings and admissions,

plaintiff indicates that he had met with doctors and medical personnel on multiple occasions.  *See*

Plaintiff's Amended Complaint, D.I. 14.  There is no evidence of deliberate or intentional

indifference to plaintiff's serious medical needs.

    The record indicates that plaintiff had been seen by numerous CMS doctors, nurse

practitioners, physician's assistants, and outside specialists.  In addition, CMS properly

coordinated plaintiff's care with the outside healthcare provider, Dr. DuShuttle.  Plaintiff was

seen by Dr. DuShuttle, an orthopedist, on February 17, 2005.  *See* February 17, 2005 medical

record attached hereto as Exhibit "A".  The diagnosis was displaced intra-articular fracture, distal

phalanx, left index finger with volar subluxation.  *Id*.  Dr. DuShuttle noted that surgery was a

possibility. *Id.*  On October 3, 2005, Sherel A. Ott, MSN, FNP-C requested that plaintiff be seen

by an orthopedist.  *See* Consultation Request dated October 3, 2005 attached hereto as Exhibit

"B".  It was noted that x-rays had been taken which showed and confirmed that plaintiff had a

---

[28] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).
[29] *Id*. at 842.  *See also Beyerbach v. Sears*, 49 F.3d 1324, 1325-1326 (8th Cir. 1995)(insufficient evidence of objective seriousness when no medical evidence that the delay in treatment produced any harm); *See also Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994)(insufficient evidence of serious medical need when the medical need claimed is based on bare assertion of inmate).

displaced avulsion fracture at the base of distal phalanx and subluxation of corresponding

interphalangeal joint with some soft tissue swelling. *Id*. The presumed diagnosis was displaced

avulsion fracture of left index finger. *Id*. On December 2, 2005, plaintiff was again seen again

by Sherel A. Ott, MSN, FNP-C. See Consultation Request dated December 2, 2005 attached

hereto as Exhibit "C". She requested that plaintiff be seen by Dr. DuShuttle for fusion with

pinning and bone graft of left index finger. *Id*.

     Moreover, on April 20, 2006, Dr. Dale Rodgers requested that plaintiff be seen by Dr.

DuShuttle. *See* Consultation Request dated April 20, 2006 attached hereto as Exhibit "D". It

was noted that plaintiff was status post left index finger fusion with pinning and bone graft. *Id*.

Surgery had been performed on April 19, 2006. *Id*. Plaintiff was receiving pain medication,

including Loratab and Cipro, for his finger condition. *Id*. CMS' InterDisciplinary Progress

Notes dated May 11, 2006 and May 12, 2006 further indicate that plaintiff was receiving

necessary medical treatment for his left index finger. *See* Correctional Medical Services Inter

Disciplinary Progress Notes dated May 11, 2006 and May 12, 2006 attached hereto as Exhibit

"E". Soaks had been ordered by Dr. Durst and plaintiff was to be seen by Dr. DuShuttle for

follow-up evaluation of his left index finger. *Id*. Plaintiff was receiving medication which

included Vicodin. *Id*. As evidenced by the records, plaintiff's left index finger was being

monitored for status of infection. A consultation request was written for plaintiff to be seen by

Dr. DuShuttle on May 12, 2006 for re-evaluation of his left index finger. *See* Consultation

Request dated May 12, 2006 attached hereto as Exhibit "F". The consultation request indicates

that plaintiff was still receiving medication for pain which included Loratab. *Id*.

     Plaintiff was seen by Dr. DuShuttle on May 15, 2006. See medical record dated May 15,

2006 attached hereto as Exhibit "G". Dr. DuShuttle agreed that due to the infection the pins had

to be removed. *Id*. He further recognized that the results might not be as good due to the early removal of the pins. *Id*. A velcro finger splint was applied and IV antibiotics were ordered. *Id*. Plaintiff was seen for follow-up on May 22, 2006. See Consultation Report dated May 22, 2006 and medical record dated May 22, 2006 attached hereto as Exhibit "H". Signs of improvement were noted with respect to plaintiff's left index finger. *Id*. There was less swelling. *Id*. Plaintiff was to continue with the splint and IV antibiotics. *Id*.

As early as June 7, 2006, it was determined that plaintiff might have osteomyelitis. *See* Consultation Request dated June 7, 2006 attached hereto as Exhibit "I". Plaintiff has not produced any expert to say that defendants are responsible in any way for causing his osteomyelitis.

A PICC line for IV antibiotics was placed at Kent General Hospital and flushed appropriately by CMS and its employees. *See* Medical Records attached hereto as Exhibit "J". The medical records indicate that CMS administered proper wound care and appropriate dressing changes. *Id*. On July 18, 2006, plaintiff was again seen by Dr. Rodgers. *See* Consultation Request dated July 18, 2006 attached hereto as Exhibit "K". Plaintiff was to be seen in one week for determination of whether or not to amputate. *Id*.

As evidenced by the medical records, plaintiff received appropriate medical care. Plaintiff received diagnostic testing, which included X-rays and MRIs of his left index finger. The diagnostic testing confirmed that plaintiff sustained a displaced intra-articular fracture, distal phalanx, left index finger with volar subluxation. Surgery was performed and plaintiff's finger was pinned. However, due to an infractory infection, the pins had to be removed. Plaintiff received appropriate and timely treatment for his fracture. CMS properly coordinated plaintiff's care with the outside healthcare provider, Dr. DuShuttle. He was seen for follow-ups and

received medication for pain.  Plaintiff properly received IV antibiotics including Keflex and its derivatives to treat osteomyelitis.  However, once it was determined that plaintiff's finger was unresponsive to appropriate treatment and could not be treated due to osteomyelitis, plaintiff's left finger had to be amputated in October of 2006.  The records further indicate that CMS administered proper care and appropriate dressing changes after the amputation.  *See* Medical records attached hereto as Exhibit "L".  Medical care was clearly provided and has not been recklessly or intentionally denied or delayed to cause unnecessary harm.  Plaintiff has received adequate medical treatment for the duration of his confinement at DCC.

Dr. Durst has stated in his Affidavit, to be supplied as Exhibit "M", that he was familiar with plaintiff's medical condition and that he had reviewed plaintiff's medical records from CMS regarding medical treatment plaintiff received while incarcerated at the Delaware Correctional Center.  *Id*.  With respect to plaintiff's finger condition, Dr. Durst stated that Mr. Porterfield had undergone multiple medical evaluations by physicians and ancillary personnel throughout the course of his medical management in the Delaware Correctional Center.  *Id*.  Based upon his general medical knowledge and his review of plaintiff's medical records from CMS, Dr. Durst opined that plaintiff's medical treatment, which included medication, routine checkups and examinations by an orthopedist were reasonable, necessary and timely.  *Id*.  Dr. Durst opined further that the left index finger condition was properly diagnosed and treated.  *Id*.  The Affidavit of Dr. Durst further indicates that plaintiff has received the appropriate and necessary medical care within the facility.  *Id*.  While plaintiff may dispute the type of treatment he received, he has not presented any evidence to establish a cognizable claim against CMS. Therefore, summary judgment should be granted in favor of defendant, CMS.

Dr. Dale Rodgers has stated in her Affidavit, to be supplied as Exhibit "N", that she was familiar with plaintiff's medical conditions, had provided treatment to him, and had reviewed his medical chart from CMS. Specifically, Dr. Rodgers had treated plaintiff on multiple occasions, including, but not limited to April 20, 2006, May 23, 2006, and July 18. 2006. *Id.* On April 20, 2006, plaintiff presented status post left index finger fusion with pinning and bone graft. *Id.* His sutures were intact and there was minimum swelling. *Id.* Plaintiff was receiving medication for pain, which included Loratab. *Id.* Plaintiff was seen again by Dr. Rogers on May 23, 2006. *Id.* He was status post left index finger fusion with pinning removed secondary to infection. *Id.* It was noted that plaintiff had been seen by an orthopedist and had been pleased with improvement of infection. *Id.* On July 18, 2006, plaintiff presented status post left index finger fusion/osteomyelitis, a recognized risk associated with plaintiff's procedure. *Id.* It was noted that an MRI of plaintiff's left index finger had been taken on July 6, 2006. *Id.* Plaintiff was to continue IV Ancef and be seen by Dr. DuShuttle for determination of whether amputation was necessary. *Id.* His current medications included Loratab and IV Ancef. *Id.* Dr. Rodgers opined within a degree of medical certainty, that the medical care and management of Mr. Porterfield's left index finger by CMS and its employees was appropriate and in accordance with generally accepted principles of medical care. *Id.*

Moreover, when the inmate alleges that the delay in treatment is the constitutional deprivation, the objective seriousness of the deprivation should be measured "by referenced to the *effect* of delay in treatment."[30] "An inmate who complains that delay in medical treatment rose to the constitutional violation must place *verifying medical evidence* in the record to

---

[30] *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994); *See also Wilson v. Seiter*, 501 U.S. 294, 303 (1991)(harmfulness of the deprivation to the prisoner is part of objective inquiry in an Eighth Amendment claim).

establish the detrimental effect of delay in medical treatment to succeed."[31]   The plaintiff in

*Sherrer v. Stephens* alleged defendants violated the Eighth Amendment because they were

deliberately indifferent in treating his broken index finger.[32]   The record showed that plaintiff

had received painkillers, instructions to apply ice and to perform motion therapy on the finger,

and x-rays.[33]   Once the injury had been diagnosed, plaintiff was examined by orthopedists.[34]   The

court noted that while delays occurred in plaintiff's initial examination, and in executing orders

for x-rays and an orthopedic examination, the court concluded that the inmate failed to satisfy the

objective component of the deliberate indifferent test because the inmate failed to submit

"sufficient evidence that defendants ignored 'an acute or escalating situation' or that delays

adversely affected his prognosis, given the type of injury in this case."[35]

        Plaintiff has essentially alleged he experienced a delay in treatment that amounted to a

constitutional deprivation.  Plaintiff, however, has failed to present any "verifying medical

evidence,"[36] that anyone "ignored an acute or escalating situation' or that delays adversely

affected his prognosis, given the type of injury in this case."[37]   Like *Sherrer*, the records in the

present case show that plaintiff received painkillers, x-rays and outside consultations with an

orthopedist.  The interdisciplinary progress notes dated July 7, 2005, indicate that small cut on

plaintiff's left index finger was cleaned and dressed.  *See* Interdisciplinary Progress Notes dated

July 7, 2005 attached hereto as Exhibit "O".  The inmate denied any pain or distress.  *Id.*  Sick

call slips dated August 2, 2005, August 14, 2005, September 30, 2005, November 3, 2005, and

December 7, 2005, attached hereto as Exhibit "P", again demonstrate that plaintiff was in fact

---

[31] *Hill*, 40 F.3d at 1188 (emphasis added).
[32] *Id*. at *1.
[33] *Id*. at *2.
[34] *Id*.
[35] *Id*. at *2 (evidence insufficient where treatment for a broken finger was delayed, but ice, painkillers, and x-rays eventually given)(quoting *Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990)(other citation omitted).
[36] *Hill*, 40 F.3d at 1188.
[37] *Sherrer*, at *2.

receiving medication and treatment.  X-rays had been ordered and plaintiff was receiving

medication including, but not limited to Motrin.  *Id*.  Plaintiff has proffered no other evidence to

support his theory that there was a delay in medical treatment.  Nor has he produced an expert to

say that defendants were responsible for causing his osteomyelitis.  Plaintiff was not denied

appropriate medical treatment.

Plaintiff's Eighth Amendment claim based upon the alleged delay in treatment must be

dismissed since he has failed to present any evidence that he was intentionally denied or delayed

treatment.  Plaintiff's complaints are essentially that he does not agree with the treatment he

received.  Whether the treatment was sufficient or not is not a proper claim under the Eighth

Amendment.[38]  Plaintiff received regular treatment for his condition and the sufficiency of the

treatment received is not within the purview of the District Court under a § 1983 claim.[39]  The

requirement of a knowing disregard for a finding of deliberate indifference cannot be met.

Therefore, CMS' Motion for Summary Judgment should be granted.

3.    **SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF
DEFENDANT, DR. DURST, BECAUSE THERE IS NO CONDUCT ON
THE PART OF DR. DURST THAT DEMONSTRATES DELIBERATE
INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEEDS**

In his Amended Complaint plaintiff alleges that he was seen by Dr. Durst on June 7,

2006, at which time Dr. Durst allegedly informed him that "Dr. Dushuttle did not know what he

was talking about when Dr. Dushuttle informed the Plaintiff that Defendant Rodgers course of

treatment of physical therapy so soon after the operation was wrong."  D.I. 14 at ¶37.  Plaintiff

further alleges that "[i]nstead of giving Plaintiff Keflef as Dr. Dushuttle ordered, the Defendants

placed Plaintiff on a different medicine, Ancef."  *Id*.  Plaintiff's allegations against Dr. Durst are

essentially that Dr. Durst rescinded and/or failed to order a medication that plaintiff deems was

---

[38] *Id*. at 107.
[39] *Id*.

appropriate. These allegations against Dr. Durst, fit squarely under the umbrella of "medical judgment." Just as the failure to order an X-ray, requested by the inmate and deemed necessary by the inmate, did not constitute cruel and unusual punishment under *Estelle*, it cannot be said that the failure to order a particular medication, constitutes cruel and unusual punishment. The Court should disavow any attempt to second-guess the propriety or adequacy of plaintiff's particular course of treatment. Plaintiff's allegations do not, and can not, state a cognizable claim under § 1983.

Plaintiff's contention is, at best, a mere difference in opinion with regards to appropriate medical treatment. This is not a cognizable claim under the Eighth Amendment since a "mere difference of opinion between the prisons's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment."[40] The plaintiff has not presented any evidence showing that Dr. Durst displaced deliberate indifference, or reckless disregard, to a serious medical need. Indeed, prison authorities should be afforded considerable latitude in the diagnosis and treatment of prisoners.[41] Accordingly, summary judgment should be granted as it relates to Dr. Durst.

**4.      SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF DEFENDANT, DR. DALE RODGERS, BECAUSE THERE IS NO CONDUCT ON THE PART OF DR. RODGERS THAT DEMONSTRATES DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEEDS**

In his Amended Complaint, plaintiff alleges that immediately following surgery, in May of 2005, Dr. Rodgers began him on a course of treatment consisting of physical therapy to his injured finger. D.I. 14 at ¶ 32. Plaintiff further claims that a week after Dr. Rodgers ordered

---

[40] *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *Fitzgerald v. Septer*, 1998 U.S. Dist. LEXIS 23397, C.A. No. 97-663-JJF at 2 (D. Del. July 27, 1998) (holding that claim alleging mere dissatisfaction with medical care administered to prisoner is insufficient to support cognizable claim under 1983); *Johnstone v. United States*, 980 F. Supp. 148, 153 (E.D. Pa. 1997).

[41] *See Inmates of Allegheny County Jail*, 612 F.2d 754, 762 (3d Cir. 1979).

physical therapy, he was informed that his finger was badly infected due to the physical therapy. *Id*. at ¶ 33. For the same reasons previously stated with respect to Dr. Durst, the allegations against Dr. Rodgers, fit squarely under the umbrella of "medical judgment." Plaintiff's allegations do not, and can not, state a cognizable claim under § 1983. Therefore, summary judgment should be granted in favor of Dr. Rodgers.

### B.    PLAINTIFF'S STATE LAW CLAIMS MUST FAIL

To the extent that plaintiff's claims fall within the definition of "Medical Negligence" pursuant to 18 *Del. C.* § 6801 (7), expert testimony must be provided to survive a motion for summary judgment. According to the statute, "'[m]edical negligence' means any tort or breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider to a patient."[42] Moreover, the plaintiff bears the initial burden of presenting expert medical testimony on both the deviation from the applicable standard of care and causation.[43] As this Court explained in *McCusker*,

> Consistent with the plain language of the [Medical Malpractice] Act, 'the production of expert testimony is an essential element of a plaintiff's medical malpractice case and, as such, is an element on which he [] bears the burden of proof.' Summary judgment is proper when a plaintiff fails to adduce any expert medical testimony in support of his allegations of negligence under the Act.[44]

The plaintiff has failed to provide any expert testimony on either an alleged deviation in the standard of care, nor causation. He has not provided any expert testimony saying that defendants are responsible for causing plaintiff's osteomyelitis. As such, to the extent plaintiff states a claim for state law medical negligence, CMS is entitled to dismissal of these claims.

### C.    PLAINTIFF HAS FAILED TO EXHAUST HIS ADMINISTRATIVE     REMEDIES

---

[42] 18 *Del. C.* § 6801.
[43] *McCusker v. Surgical Monitoring Assocs.*, 299 F. Supp. 2d 396, 398 (D. Del. 2004)(citing *Burkhart v. Davies*, 602 A.2d 56 (Del. 1991)(further citations omitted).
[44] *Id*. (citation omitted).

The Prison Litigation Reform Act of 1996 mandates a prisoner exhaust his administrative remedies prior to bringing an action pursuant to Section 1983.[45]  42 U.S.C. §1997e (a) provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available to him are exhausted.

"Prison conditions" have been defined to include the environment in which the prisoners live, the physical conditions of that environment and the nature of the services provided therein.[46]

The Delaware Department of Corrections has established administrative procedures that an inmate must follow to file a medical grievance.[47]  An inmate must file a grievance with the Inmate Grievance Chairperson (IGC) who then forwards it to the medical staff for review.  If action needs to be taken, the medical staff is required to attempt an informal resolution of the grievance with the inmate.  If the grievance cannot be resolved informally, the grievance is forwarded to the Medical Grievance Committee to conduct a hearing.  If the medical grievance hearing decision does not satisfy the inmate, the inmate may complete a Medical Grievance Committee Appeal Statement which is then submitted to the Bureaus Grievance Officer.[48]  The Bureau Grievance Officer will recommend a course of action to the Bureau Chief of Prisons, who renders the final decision.[49]

Plaintiff complains of prison conditions which under 42 U.S.C. §1997e(a) requires him to exhaust the administrative remedies available to him.  He claims that "[o]n August 20, 2005 after repeated requests for treatment to his finger and receiving none, Plaintiff submitted a grievance to Michael McGreanor, a grievance coordinator at Delaware Correctional Center." *See* Plaintiff's

---

[45] *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000); *see also Booth v. Churner*, 206 F.3d 289, 294-95 (3d Cir. 2000) *cert. granted*, No. 99-1964, 2000 WL 798208 (Oct. 30, 2000) (§1997e(a) is applicable to all inmate claims except those challenging the fact or duration of confinement).
[46] *Booth*, 206 F.3d at 291.
[47] *Frinks*, 2005 U.S. Dist. LEXIS 21043 (D. Del. 2005).
[48] *Id*.
[49] *Id*.

Amended Complaint, D.I. 14, at ¶14.  According to the inmate, on September 1, 2005, Lee Anne

Dunne, a grievance investigator for the Delaware Correctional Center was assigned to investigate

the allegations contained in plaintiff's grievance.  *See* Plaintiff's Amended Complaint, D.I. 14, at

¶15.  Plaintiff's Amended Complaint alleges that further medical grievances were filed

concerning his medical treatment.[50]  Taking plaintiff's allegations as true, it is clear that plaintiff

has not pursued his administrative remedies to a final decision.    If the plaintiff in the present

case was not satisfied by the decision of the Medical Grievance Committee he could have

submitted a Medical Grievance Committee Appeal Statement.[51]  There is no indication that

plaintiff has done same.  Therefore, plaintiff has failed to exhaust his administrative remedies

prior to filing his action.[52]

---

[50] Plaintiff alleges that the following incidents in his Amended Complaint:

    21.     On January 30, 2006, the Plaintiff wrote to Warden Carroll, the warden at the Delaware Correctional Center informing him about his medical condition and requested his assistance in getting the proper medical treatment.

    …

    23.     On February 15, 2006, the Plaintiff wrote to Deputy Warden Burris informing him about his medical  condition and requested his assistance in getting the proper medical treatment.

    …

    25.     On February 21, 2006, Warden Carroll forwarded Plaintiff's January 30, 2006 letter to Deputy Warden Pierce.

    26.     On February 23, 2006 Defendant Eller and Grievance Coordinator McCreaner and Grievance Rearing Committee Members Gordon and Reddinger held a hearing regarding Plaintiff's August 20, 2005 grievance request.

    27.     Plaintiff was escorted out of the grievance after Grievance Coordinator McCreanor stated that the Plaintiff had "an attitude".

    28.     Plaintiff was subsequently informed that the grievance panel concluded that the medical treatment he was receiving was adequate.

    29.     On February 27, 2006, Deputy Warden Pierce forwarded Plaintiff's January 30, 2006 grievance request to Defendant Eller for her investigation and action.

    30.     On March 14, 2006, Defendant Eller forwarded Plaintiff's January 30, 2006 grievance request to Defendant CMS.  After review, Defendant CMS approved Plaintiff's necessary surgery to his finger.

    …

    47.     On August 23, 2006, Plaintiff submitted a medical grievance request requesting that an investigation be done to determine why Defendant Rodgers ordered therapy to Plaintiff's finger so soon after the operation.  The investigation was assigned to Investigator Rodweller.

    …

[51] *Frink v. Williams*, 2005 U.S. Dist. LEXIS 21043 (D. Del. 2005).

[52] *Id*.

42 U.S.C. § 1997e (a) should be applied without exception to promote the policy behind the exhaustion requirement, which is to allow the Department of Corrections an opportunity to discover and correct mistakes and conserve judicial resources.[53]  At the time this action was filed, several procedural steps remained under the Department of Corrections Inmate Grievance Procedure that were not completed, thereby obviating any opportunity to discover and correct any alleged mistakes, and wasting judicial resources.  The need to exhaust administrative remedies is a necessary requirement to avoid wasting costly judicial resources.  Therefore, plaintiff's Amended Complaint against CMS must be dismissed as he has failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act of 1996.

## D.     PUNITIVE DAMAGE ISSUE

The Amended Complaint alleges the acts of defendants were committed "willfully, wantonly, maliciously, intentionally, outrageously, deliberately and/or by conduct so egregious as to shock the conscience", presumably as a basis for plaintiff's claim for punitive damages.

"While the question of punitive damages is ordinarily for the trier of fact, summary judgment is appropriate if the evidence permits no reasonable inference that defendant's conduct was sufficiently reprehensible to warrant the imposition of punitive damages."[54]  To avoid a jury award based upon sympathy alone,  "[i]t is essential…that the Court test the legal sufficiency of such claims where an appropriate motion to that effect has been tendered." [55]  Moreover, "[t]he Court is required to closely examine the defendant's conduct and make a determination that such conduct is outrageous because of evil motive or reckless indifference to the rights of others."[56]

---

[53] *O'Neil v. Kearney, et al.*, C.A. No. 99-848-SLR, Memorandum Order (Robinson, J. November 6, 2000)(citing *Nyhuis*, 204 F.3d 65, 75 (3d Cir. 2000)).

[54] Jardel Co. Inc. v. Hughes, 523 A.2d 518 (Del. 1987).

[55] Id. at 528, n. 6.

[56] Greenlee v. Imperial Homes Corp., 1994 Del Super. LEXIS 386, at *23-26 (Del. Super. Ct. 1994)

Punitive damages are warranted "only where the defendant's conduct has been particularly reprehensible, i.e., reckless, or motivated by malice or fraud."[57] Moreover, "[w]here the claim of recklessness is based on an error of judgment, a form of passive negligence, the plaintiff's burden is substantial…the precise harm which eventuated must have been reasonably apparent but consciously ignored in the formulation of the judgment." Jardel, 523 A.2d at 531.

Moreover, according to 18 Del. C. § 6855, in an action founded in medical negligence, "punitive damages may be awarded only if it is found that the injury complained of was maliciously intended or was the result of willful or wanton misconduct by the health care provider… Injuries shall not be considered maliciously intended in instances in which unforeseen damage or injury results from intended medication…treatment or the intended omission thereof, administered or omitted without actual malice…."

Plaintiff has failed to develop a factual record to support an imposition of these extraordinary damages. In order to state a claim for punitive damages under the circumstances of this case, plaintiff must meet a two-prong test: i) foreseeable damage or injury; and ii) malicious intent. Assuming arguendo that CMS and Drs. Rodgers and Durst either omitted or prescribed medication or treatment that foreseeably resulted in harm to Porterfield, which is denied, no reasonable inference is possible from the record that CMS or the doctors acted with "actual malice" in the medical treatment provided to Porterfield. Additionally, plaintiff has not produced any expert to suggest that the conduct rises to the level of "willful or wanton misconduct". CMS, Dr. Rogers and Dr. Durst are entitled to summary judgment on the issue of punitive damages in the state law claim for medical negligence.

Accordingly, summary judgment striking plaintiff's demand for punitive damages is appropriate.

---

[57] Id. at * 24 (citing Jardel, 523 A.2d at 529).

**C.    CONCLUSION**

Based upon the foregoing, defendants, Correctional Medical Services, Inc., Dr. Dale

Rodgers and Dr. Durst, move this Honorable Court to enter summary judgment in their favor and

against plaintiff on all claims pursuant to Federal Rule of Civil Procedure 56.


MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN


BY:    _/s/ Kevin J. Connors_
    Kevin J. Connors, Esquire – I.D. # 2135
    1220 N. Market Street, 5th Floor
    P.O. Box 8888
    Wilmington, DE  19899
    (302) 552-4302
    Attorney for Defendants,
    Correctional Medical Services, Inc.,
    Dr. Dale Rodgers and Dr. Durst

**DATED:  July 31, 2008**
15/649632.v1

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANTHONY PORTERFIELD, | **:** | C.A. No.: 07-147-SLR |
| | **:** | |
| Plaintiff, | **:** | |
| | **:** | JURY TRIAL DEMANDED |
| v. | **:** | |
| | **:** | |
| CORRECTIONAL MEDICAL SERVICES | **:** | |
| (CMS), et al., | **:** | |
| | **:** | |
| Defendants. | **:** | |

# EXHIBIT "M"

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

ANTHONY PORTERFIELD,　　　　　**:**　　C.A. No.: 07-147-SLR
　　　　　　　　　　　　　　　　**:**
　　　　　　Plaintiff,　　　　　　**:**
　　　　　　　　　　　　　　　　**:**　　JURY TRIAL DEMANDED
　　　　v.　　　　　　　　　　　**:**
　　　　　　　　　　　　　　　　**:**
CORRECTIONAL MEDICAL SERVICES **:**
(CMS), et al.,　　　　　　　　　**:**
　　　　　　　　　　　　　　　　**:**
　　　　　　Defendants.　　　　　**:**

# EXHIBIT "N"

15/651410.v1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ANTHONY PORTERFIELD, | : | CIVIL ACTION NO.: 07-147-SLR |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| CORRECTIONAL MEDICAL SERVICES | : | |
| INC. (CMS), et al., | : | |
| | : | |
| Defendants. | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2008, upon consideration of the Motion of Defendants, Correctional Medical Services, Inc., Dr. Dale Rodgers, and Dr. Durst, for Summary Judgment with Memorandum of Points and Authorities and plaintiff's Response thereto, it is hereby Ordered that the Motion is granted and summary judgment is entered in favor of defendants, Correctional Medical Services, Inc., Dr. Dale Rodgers, and Dr. Durst and against plaintiff.

_____
                                                                                            J.

15/651377.v1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

ANTHONY PORTERFIELD,    **:**    CIVIL ACTION NO.: 07-147-SLR
    **:**
    Plaintiff,    **:**
    **:**
    v.    **:**    JURY TRIAL DEMANDED
    **:**
CORRECTIONAL MEDICAL SERVICES **:**
INC. (CMS), et al.,    **:**
    **:**
    Defendants.    **:**

## CERTIFICATE OF SERVICE

I, Kevin J. Connors, hereby certify that two (2) copies of the **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS, CORRECTIONAL MEDICAL SERVICES, INC., DR. DALE RODGERS AND DR. DURST, FOR SUMMARY JUDGMENT** in the above-captioned matter have been served by E-File and regular U.S. mail to the following:

Michael Pileggi, Esquire
437 Chestnut Street, Suite 905
Philadelphia, PA 19106

Edward J. Fornias, Esquire
Roeberg, Moore & Friedman, P.A.
910 Gilpin Avenue
Wilmington, DE 19806

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY:   */s/ Kevin J. Connors*
    Kevin J. Connors, Esquire – I.D. # 2135
    1220 N. Market Street, 5th Floor
    P.O. Box 8888
    Wilmington, DE  19899
    (302) 552-4302
    Attorney for Defendants,
    Correctional Medical Services, Inc.,
    Dr. Dale Rodgers and Dr. Durst

**DATED:  July 31, 2008**
15/651378.v1