## IN THE UNITED STATES DISTRICT
## COURT OF DELAWARE

| | |
|---|---|
| **ANTHONY PORTERFIELD** | : |
| **Plaintiff** | : |
| **vs.** | : C.A. #07- 147 - SLR |
| **CORRECTIONAL MEDICAL SERVICES (CMS) et al.** | : |
| **Defendants** | : |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Anthony Porterfield, by and through his counsel, Michael Pileggi,

Esquire, hereby files his response to defendants' Motion for Summary Judgment.

Plaintiff's accompanying Memorandum of Law in opposition to defendants' Motion

serves as plaintiff's response.

Respectfully submitted,

*s/s Michael Pileggi*
Michael Pileggi, Esquire
303 Chestnut Street
Philadelphia, PA 19106
215-627-8516
Counsel for Plaintiff

1

IN THE UNITED STATES DISTRICT
COURT OF DELAWARE

| | |
|---|---|
| **ANTHONY PORTERFIELD** | : |
| **Plaintiff** | : |
| **vs.** | **: C.A. #07- 147 - SLR** |
| **CORRECTIONAL MEDICAL SERVICES (CMS) et al.** | : |
| **Defendants** | : |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

On June 21, 2007, plaintiff Anthony Porterfield filed his Amended Complaint

after instituting this Section 1983 civil rights action for the constitutional deprivations

by the defendant Correctional Medical Services, Incorporated ("CMS") and two

physicians employed by CMS while he was incarcerated at the Delaware Correctional

Center ("DCC"). Named as defendants are the CMS under a theory of municipal

liability; and Dr. Dale Rodgers and Dr. Durst, both individually and as agents and

employees of the CMS.

The gravamen of plaintiff's complaint is that acts and omissions of defendants

resulted in his subjection to cruel and unusual punishment in violation of the Eighth

Amendment to the United States Constitution. Specifically, plaintiff avers that he did

not receive necessary medical treatment for an open fracture of his index finger on his

left hand, a condition left untreated by the defendants. As a direct result, the plaintiff

developed osteomalitteous and his finger had to be subsequently amputated.

2

Defendants requests summary judgment under several theories, that; 1) plaintiff has failed to prove a constitutional violation pursuant to the Eighth Amendment because he has failed to adduce any evidence that the defendants were deliberately indifferent to plaintiff's serious medical need; 2) because there is no conduct by the individual defendants that demonstrate deliberate indifference; 3) medical malpractice under state law; 4) failure to exhaust administrative remedies and 5) punitive damages. Plaintiff's response now follows.

## II. FACTS[1]

On July 7, 2005, Correctional Officer Kneupp while making his rounds walked by plaintiff's cell and without warning or cause deliberately and wantonly slammed the tray slot door to plaintiff's cell on his finger while plaintiff's hand was lying on the tray slot. The plaintiff cried out in pain while Officer Kneupp chuckled and walked away. Am. Compl. ¶ ¶ 10-11.

On July 8, 2005, the plaintiff signed up for sick call because the correctional officers refused to schedule plaintiff for an emergency medical visit. At medical after being examined, plaintiff was informed that he was fine and was given Ibuprofen for the pain and returned back to his cell. Am. Compl. ¶ ¶ 12-13.

On August 20, 2005 after repeated requests for treatment to his finger and receiving none, plaintiff submitted a grievance to Michael McGreanor, a grievance coordinator at DCC. On September 1, 2005, Lee Anne Dunn, a grievance investigator for the Delaware Correctional Center was assigned to investigate the allegations

---

[1] The following facts are asserted in plaintiff's Amended Complaint. Defendants have responded to plaintiff's averments with general denials. *See* Answers to Amended Complaint ¶¶ 10-49. Therefore plaintiff's factual averments are not in dispute.

3

contained in plaintiff's grievance. On September 16, 2005, x-rays were taken of plaintiff's finger. On September 29, 2005, plaintiff obtained the results of the x-rays and was informed that the findings were normal. Am. Compl. ¶ ¶ 14-17.

On October 3, 2005, the plaintiff again went to sick call because of his injured finger where the doctor confirmed that his finger was broken. He still received no treatment for his broken finger and on November 4, 2005 he again went to medical where the doctor again confirmed that his finger was broken. Am. Compl. ¶ ¶ 18-19.

In December 2005, the plaintiff was finally sent out to see a specialist who informed defendants that since he was without medical treatment for so long with his broken finger, he required immediate surgery. On January 30, 2006, the plaintiff wrote to Warden Carroll, the warden at the Delaware Correctional Center informing him about his medical condition and requested his assistance in getting the proper medical treatment. On January 30, 2006 Warden Carroll received the plaintiff's plea for medical care. On February 15, 2006, the plaintiff wrote to Deputy Warden Burris informing him about his medical condition and requested his assistance in getting the proper medical treatment. Am. Compl. ¶ ¶ 20-23.

On February 17, 2006 the plaintiff was again taken to see Dr. Richard DuShuttle, a second specialist, who reiterated Plaintiff's need for immediate surgery, but informed the Plaintiff that he would not receive the surgery until it was approved by Defendants. Am. Compl. ¶ 24.

On February 21, 2006, Warden Carroll forwarded the plaintiff's January 30, 2006 letter to Deputy Warden Pierce. On February 23, 2006 defendant Eller and Grievance Coordinator McCreaner and Grievance Hearing Committee Members

Gordon and Heddinger held a hearing regarding the plaintiff's August 20, 2005 grievance request. The plaintiff was escorted out of the grievance after Grievance Coordinator McCreanor stated that the plaintiff had "an attitude". The plaintiff was subsequently informed that the grievance panel concluded that the medical treatment he was receiving was adequate. Am. Compl. ¶ ¶ 25-28.

On February 27, 2006, Deputy Warden Pierce forwarded the plaintiff's January 30, 2006 grievance request to defendant Eller for her investigation and action. On March 14, 2006, defendant Eller forwarded the plaintiff's January 30, 2006 grievance request to defendant CMS. After review, defendant CMS approved the plaintiff's necessary surgery to his finger. Am. Compl. ¶ ¶ 29-30.

On April 19, 2006, nine (9) months after breaking his finger, the plaintiff was operated on. Two (2) screws were inserted in his finger. Immediately following surgery, in May of 2005, defendant Rodgers began the plaintiff on a course of treatment consisting of select physical therapy exercises to his injured finger. A week after defendant Rodgers ordered physical therapy, the plaintiff returned to Dr. DuShuttle who informed the plaintiff that his finger was badly infected. Dr. Dushuttle ordered that the plaintiff be placed on an IV antibiotic for the following two (2) weeks. Am. Compl.

¶ ¶ 31-34.

On June 6, 2006, the plaintiff returned to Dr. Dushuttle and was informed that his finger was still badly infected which may require amputation. Dr. Dushuttle ordered that the plaintiff be placed on the antibiotics. Plaintiff submitted a grievance informing the defendants that his finger was badly infected. Am. Compl.

¶¶35-36.

On June 7, 2006, the plaintiff was seen by defendant Durst and informed that Dr. Dushuttle did not know what he was talking about when Dr. Dushuttle informed the plaintiff that defendant Rodgers course of treatment of physical therapy so soon after the operation was wrong. Instead of giving plaintiff Keflef as Dr. Dushuttle ordered, the defendants placed the plaintiff on a different medicine, Ancef. After being placed on the IV as ordered by Dr. Dushuttle, from June 10, 2006 to June 15, 2006, the defendants failed to change the plaintiff's IV tubing as required. Am. Compl. ¶¶37-38.

On June 22, 2006, the plaintiff was again taken to be examined by Dr. Dushuttle who made an incision in the plaintiff's finger to drain it and a clean bandage was placed on it. On June 27, 2006, the plaintiff complained that the nurses were not changing his bandages as required. On June 29, 2006, the plaintiff requested that Christine Roe change his bandage that had not been changed since his visit to Dr. Dushuttle on June 22, 2006. Defendant Roe failed and refused to change his bandage. Am. Compl. ¶¶39-41.

On June 30, 2006, the plaintiff was transported to Kent General Hospital where he had a pick line inserted in his arm and his bandage was finally changed. On July 3, 2006, while hooking plaintiff to the IV tubing, defendant Christine Roe refused to flush plaintiff's dirty catheter line claiming that there was no need to do so. Am. Compl. ¶¶ 42-43.

On July 6, 2006, the plaintiff was taken and given an MRI of his finger that revealed that the infection in his finger had spread to his bone. Defendants ordered

6

that the plaintiff remain on the IV antibiotics for an additional six (6) weeks where at the end of that period of time, he would be returned to Dr. Dushuttle to be examined. Am. Compl. ¶¶ 44-45.

On August 11, 2006 the plaintiff was taken to be examined by Dr. Dushuttle where x-rays were taken of his finger. Dr. Dushuttle informed him that the infection was so bad that plaintiff's finger would be required to be amputated at the second knuckle. On August 23, 2006, plaintiff submitted a medical grievance request requesting that an investigation be done to determine why defendant Rodgers ordered therapy to plaintiff's finger so soon after the operation. The investigation was assigned to Investigator Rodweller. Am. Compl. ¶¶ 46-47.

On October 2, 2006, after nearly fifteen (15) months after Officer Kneupp broke plaintiff's finger, the finger was amputated. Following the operation, Nurse Christine Roe continued to refuse to change plaintiff's bandage. Ms. Roe informed the plaintiff that defendant Rodgers ordered the nurse not to change the dressing. Am. Compl. ¶¶ 48-49.

Based on the record, the following facts are undisputed. On July 7, 2005, plaintiff Anthony Porterfield's index finger on his left hand was injured. According to the defendants' Interdisciplinary Progress Notes, plaintiff had a cut on his left index finger.[2] *See* Exhibit "O", Def. Motion for Summary. The cut was "cleaned and dressed". *Id.* Between July 2005 and April 2006, plaintiff submitted at least eleven different letters or inmate request forms to various employees of the Delaware

---

[2] In contrast, the plaintiff believes that his index finger was broken.

Correctional Center, among others.[3] In these written complaints, plaintiff repeatedly requested surgery to repair the worsening condition of his finger. In addition, as evidenced by a written evaluation, as early as December 1, 2005, Dr. DuShuttle, M.D., a physician treating inmates at Delaware Correctional Center, examined plaintiff and determined that he needed immediate surgery to his finger. Between July 2005 and his surgery on April 19, 2006, the plaintiff was not informed about the infection which had developed in his finger nor did the plaintiff received any medical treatment for this worsening condition.[4] On December 1, 2005, the plaintiff was examined by Dr. DuShuttle, who informed the plaintiff that he recommended surgery. *See* a copy of Provider Consultation Report attached hereto as Exhibit "3". Plaintiff consented to the surgical operation, but the surgery was not performed until 9 months after the injury on April 19, 2006.

The surgery consisted of a "fusion with pinning and synthetic bone graft". *See* a copy of surgery report attached hereto as Exhibit "4". In May 2006, after it was disclosed to the plaintiff that he had an infection, the pins were removed due to the infectious finger. Only then was the plaintiff placed on antibiotics. The osteomalitteous had developed to such a degree that in October 2006, it was decided that plaintiff's finger had to be amputated. On October 2, 2006, plaintiff had his left index finger amputated.

---

[3] On September 16, 2005, an x-ray was taken of plaintiff's finger. The x-ray disclosed that the plaintiff suffered from a "displaced avulsion fracture at the base of distal phalanx and subluxation of corresponding interphalangeal joint with some overlying soft tissue swelling.*See* a copy of Exhibit "1". Inexplicably, on September 29, 2005, the plaintiff was informed by Sherel A. Ott, MSN FNP-C, that his x-ray results "came back normal findings".*See* a copy of Memorandum of Sherel A. Ott attached hereto as Exhibit "2".

For purposes of the instant action, the relevant time period regarding plaintiff's care is the fifteen (15) months; from July 2005 until October 2006 while he was incarcerated at Delaware Correctional Center. There is no dispute that plaintiff received *some* medical care and there is no dispute as to the course of treatment. Rather, the plaintiff contends that there was a delay in treatment to correct his broken finger and there was no treatment for his osteomalitteous until it was too late to save his finger.

## III.  STANDARD FOR DETERMINING THIS MOTION

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Hersh v Allen Prods. Co., Inc.*, 789 F.2d 230, 232 (3d Cir. 1986). In making this determination, a court must draw all reasonable inferences in favor of the non-movants. *See Meyer v Riegel Prods. Corp.*, 720 F.2d 303, 307, n. 2 (3d Cir. 1983). Summary judgment should be granted if no reasonable trier of fact could find for the non-moving party. *See Id.*; *Radich v Goode*, 886 F.2d 1391, 1395 (3d Cir. 1989).

## IV.  ARGUMENT

### A. Constitutional Violation

In their motion for summary judgment, defendants first contended that plaintiff failed to establish a constitutional claim under the Eighth Amendment. The Supreme

---

[4] It is not until after the surgery in May 2006 that that a report was created that plaintiff had developed an infection, and not until June 7, 2006, almost one year after the plaintiff's injury that defendants reported that the plaintiff had developed osteomalitteous.

Court, as early as 1976, recognized that the Eighth Amendment's protection against "cruel and unusual punishments" imposes upon government "the obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 103 (1976). In *Estelle,* an inmate plaintiff filed suit against various medical and non-medical prison personnel arising from the mistreatment of his back injury and other ailments in violation of the Eighth Amendment. *Id.* at 98-99. In holding that plaintiff could assert such a right, the Court concluded:

[D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983. *Id.* at 104-05. In *Estelle,* the seminal Supreme Court decision on the issue handed down in 1976, the plaintiff sued both the prison medical director and two non-medical prison officials for Eighth Amendment violations during the course of his medical treatment in prison. *See* 429 U.S. at 98-101. The Court explained that both prison doctors *and* guards could be held liable for acting with deliberate indifference to an inmate's serious medical needs "[r]egardless of how evidenced." *Id.* at 104-05; *See also Singletary v. Pa. Dep't of Corr.,* 266 F.3d 186, 192 n. 2 (3d Cir.2001); *Durmer v. O'Carroll,* 991 F.2d 64, 69 (3d Cir.1993); *Monmouth County Corr. Institutional Inmates v. Lanzaro,* 834 F.2d 326, 346-347 (3d Cir.1987). In 1994, the Supreme Court declared that prison officials "must ensure that

inmates receive adequate ... medical care." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (*citing Hudson v. Palmer,* 468 U.S. 517 (1984)). As the Third Circuit Court of Appeals has explained, in order to establish a violation of this constitutional right to adequate medical care, "evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden County Corr. Facility,* 318 F.3d 575, 582 (3d Cir.2003).

A medical need is "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth,* 834 F.2d at 346. (*citing Pace v. Fauver,* 479 F.Supp. 456, 458 (D.N.J.1979), *aff'd,* 649 F.2d 860 (3d Cir.1981)). Moreover, "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." *Id.* In applying this test, a court should consider such factors as the severity of the medical problems, the potential for harm if the medical care is denied or delayed and whether any such harm actually resulted from the lack of medical attention. *See Burns v. Head Jailor of LaSalle County Jail,* 576 F.Supp. 618, 620 (N.D.Ill.1984). Further, the failure to present medical testimony does not prevent this case from surviving summary judgment. *See, Miller v Correctional Medical Systems, Inc.,* 802 F.Supp. 1126 (D.Del., 1992).

From July 2005 until the amputation of his finger in October 2006, plaintiff was under the care of defendants Rodgers and Durst. During this period of time, the plaintiff's condition was diagnosed by a physician as needing surgery in September 2005, almost three months after the injury to plaintiff's finger. Delaware Correctional

Center, as well CMS's medical staff was provided with Dr. DuShuttle's recommendation that plaintiff's required surgery was necessary in September 2005, as well as in December 2005. Surgery was however delayed until April 2006. While under the defendants care, plaintiff had developed osteomalitteous shortly following his injury in July 2005. He developed this infection in his index finger as a result of the open wound that existed when his finger was fractured in July 2005.

The Court next has to determine whether plaintiff has produced sufficient evidence of "deliberate indifference" in order to withstand summary judgment. An official's conduct, does not constitute deliberate indifference unless it is accompanied by the requisite mental state. In *Farmer,* the Supreme Court held that a prison official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837. The prison official must be both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and ... draw the inference." *Id.* In cases involving allegations of inadequate medical care, the Third Circuit Court of Appeals has explained that deliberate indifference can be found where prison officials "ignored that evidence" of a serious need for medical care or where "necessary medical treatment is delayed for non-medical reasons." *Natale,* 318 F.3d at 582. When denial of an inmate's request for medical care causes "undue suffering or the threat of tangible residual injury, deliberate indifference is manifest." *Monmouth,* 834 F.2d at 346. Either actual intent or recklessness will afford an adequate basis to show deliberate indifference. *See Estelle,* 429 U.S. at 105, 5. Nor may prison officials, "with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier and less efficacious

12

treatment' of the inmate's condition." *Monmouth,* 834 F.2d at 347. (*quoting West v. Keve,* 571 F.2d 158, 162 (3d Cir.1978)). Deliberate indifference may also be found where an official bars access to a physician capable of evaluating a prisoner's need for medical treatment. *Id. See Guyer v. Du Pont,* C.A. No. 83-326-MMS (D.Del. Dec. 8, 1983) (D.I. 64 at A143) (inordinate delay of treatment may constitute display of deliberate indifference). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer* at 837-838. Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. *Andrews v. Camden County,* 95 F.Supp.2d 217, 228 (D.N.J. 2000).

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. *See Rouse v Plantier,* 182 F.3d 192, 197 (3d Cir. 1999). The court has also held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment. *Atkinson v Taylor,* 316 F.3d 257, 266 (3d Cir. 2003). *See also Monmouth,* 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); *Durmer,* 991 F.2d at 64; *White v. Napoleon,* 897 F.2d 103 (3d Cir.1990).

Plaintiff here has adequately alleged that defendants knew of his need for medical care; both his surgical procedure and the infection in his finger and that they intentionally denied him access to medical facilities, with deliberate indifference to his serious medical need. In addition, plaintiff authored a series of letters and grievances to the prison officials and the defendants in which he repeatedly mentioned his "broken finger" causing him "swelling". He explained that he was awaiting surgery and was being ignored by the prison's medical staff. He further complained that his condition was worsening. This is not a case of a prisoner alleging "mere disagreement as to the proper medical treatment." *See, e.g., Monmouth,* 834 F.2d at 346. Under these facts, a reasonable jury certainly could conclude that the prison's medical staff acted with deliberate indifference to plaintiff's serious medical condition in violation of the Eighth Amendment.

### B. Municipal Liability

The plaintiff seeks to hold CMS liable under a theory of municipal liability. CMS is the private corporation responsible for dispensing medical services. Under *Monell v. Department of Social Services of New York,* a municipality cannot be held liable under a theory of *respondeat superior* but can be held liable for a policy or custom that demonstrates deliberate indifference. 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). These principles also apply to the liability of private corporations offering those services. *Guyer v. Correctional Medical Systems, Inc.,* C.A. No. 86-361-JLL, Magistrate's Report and Recommendation, slip op. at 3 (D.Del. Apr. 16, 1990) (adopted by final order May 14, 1990)

The plaintiff brings claims against the CMS predicated on the theories of municipal liability under *Monell* and *City of Canton v Harris*, 489 U.S. 378, 380, 390-92 (1989). *Monell* held that a local governmental entity, such as a municipality, might be a "person" for purposes of 42 U.S.C. § 1983. Unless the plaintiff can demonstrate the existence of an affirmative policy of the type at issue in *Monell*, he must demonstrate that the CMS followed an unconstitutional custom. *See Harris*, 489 U.S. at 392; *Monell*, 436 U.S. at 690-91. No § 1983 liability exists on a theory of *respondeat superior*, but must be based on evidence that the government unit itself supported a violation of constitutional rights. *Monell*, 436 U.S. at 691-95. *See also Heine v. Receiving Area Personnel*, 711 F.Supp. 178, 185 (D.Del.1989) ("[T]raditional concepts of *respondeat superior* do not apply to civil rights actions brought pursuant to 42 *U.S.C.* § 1983.").

CMS argues that plaintiff has failed to allege a CMS policy or custom that demonstrates deliberate indifference to a serious medical need. Also, it argues that plaintiff failed to garner any evidence that could lead to an inference that such a policy or custom existed. The plaintiff, on the other hand, argues that CMS's failure to adequately treat his serious medical needs, ignoring his obvious medical condition and its pattern of delaying treatment of a serious medical condition indicates that it was deliberately indifferent to his serious medical needs.

In order to establish that CMS is directly liable for the alleged constitutional violations, plaintiff "must provide evidence that there was a relevant [CMS] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale*, 318 F.3d at 584. (Because respondeat superior or vicarious liability cannot be

a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories).

The Third Circuit has identified three situations wherein it will consider acts of government employees, or employees of a private entity acting under color of state law, to result from a government policy or custom, thereby rendering the entity liable under § 1983: "[1] appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy ... [2] no rule has been announced as policy but federal law has been violated by an act of the policymaker itself ... [3] policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Natale,* 318 F.3d at 584. In *Natale,* the court held that an inmate's claim survived summary judgment even though there was no evidence that the medical services company had an affirmative policy or custom that prevented its employees from inquiring into the frequency with which the inmate plaintiff required insulin, because there was evidence that the company "turned a blind eye to an obviously inadequate practice that was likely to result in the violation of constitutional rights." *Id.*

Proof of the existence of an unlawful policy or custom is not enough to maintain a § 1983 action. *Bielevicz v Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). A plaintiff bears the burden of proving that "the municipal practice was the proximate

cause of the injuries suffered"; and in doing so establish a "plausible nexus" or an "affirmative link" between the policy or custom and the specific deprivation alleged. *Id.*; *see also Kneipp v Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996). As long as the causal link is not too tenuous, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the finder of fact. *See Black v Stephens*, 662 F.2d 181, 190-91 (3d Cir. 1981), *cert. denied*, 455 U.S. 1008 (1982). The plaintiff is not required to demonstrate that his injuries were the direct result of a formal departmental procedure or encouragement in order to satisfy the nexus requirement. *Bielevicz*, 915 F.2d at 851. If the defendant is shown to have tolerated known misconduct by its officials, the issue whether the defendant's inaction contributed to the individual defendants' inaction and/or omissions in this instance is a question of fact for the finder of fact. *Id.* In *Spell v McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987), *cert. denied sub nom. City of Fayetteville v Spell*, 484 U.S. 1027 (1988), the Court articulates its theory of proximate causation: "A sufficiently close causal link between ... a known but uncorrected custom or usage and a specific violation is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom."

In this matter, plaintiff alleges that a custom exists where these individual defendant medical personnel and other employees of the CMS have ignored and failed to treat inmates with serious medical conditions, which all can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law. *Andrews v City of Philadelphia,* 895 F.2d 1469, 1480 (3d Cir. 1990); *see also Fletcher v. O'Donnell,*

17

867 F.2d 791, 793-94 (3d Cir.) ("Custom may be established by proof of knowledge and acquiescence."), *cert. denied,* [492] U.S. [919], 109 S.Ct. 3244 (1989).

Plaintiff argues that CMS exhibited deliberate indifference when, for a nine month period, it ignored and allowed him to experience a great deal of pain due to a broken finger knowing earlier on that surgery was necessary. He argues that but for an unreasonable delay of ten months, it ignored and allowed an infection in his finger to develop, without treatment, which ultimately resulted in the loss of his finger. Plaintiff alleges that the infection occurred at the fracture site, and that the infection constituted a serious medical condition (i.e., osteomalitteous), which went undiagnosed and uncultured by the defendants for an unreasonable length of time.

On August 2, 2005, the plaintiff submitted Request for Medical/Dental Sick Call Services form stating that he had a "broken finger" and has yet to receive any medical treatment since the July 2005 injury. *See* a copy of Request for Medical/Dental Sick Call Services attached hereto as Exhibit "5". On August 14, 2005, the plaintiff submitted another Request for Medical/Dental Sick Call Services form complaining that he was in pain as a result of his broken left index finger. He also informed the defendants that it was his third sick call request. *See* a copy of Request for Medical/Dental Sick Call Services attached hereto as Exhibit "6". On August 20, 2005 plaintiff filed a medical grievance, requesting he be treated for a "broken left index finger". *See* a copy of Grievance Report attached hereto as Exhibit "7". The grievance states that plaintiff had been told to submit a sick call slip. *Id.* On August 22, 2005, CMS submitted an order for an x-ray be taken of plaintiff's finger. On August 23, 2005, the plaintiff submitted another Request for Medical/Dental Sick

Call Services form complaining about the "constant pain" in his finger. *See* a copy of Request for Medical/Dental Sick Call Services attached hereto as Exhibit "8".

On September 16, 2005, an x-ray was taken, which confirmed that plaintiff's finger was fractured. *See* Exhibit "1". On September 29, 2005, Sherel Ott, MSN, FNP-C informed plaintiff that the results of the x-ray came back as normal. *See* Exhibit "2". On September 30, 2005 filed yet another Request for Medical/Dental Sick Call Services form complaining about the on-going pain in his finger. *See* a copy of Request for Medical/Dental Sick Call Services attached hereto as Exhibit "9". On October 3, 2005, defendants submitted a Consultation Request form stating that plaintiff's presumed diagnosis was a "Displaced Avulsion Fracture Lt Index finger". *See* a copy of Consultation Request attached hereto as Exhibit "10". Moreover, the diagnosis included "underlying soft tissue swelling". *Id.* On November 3, 2005, plaintiff filed another Request for Medical/Dental Sick Call Services form requesting relief from the pain from his "broken finger'. *See* a copy of Request for Medical/Dental Sick Call Services attached hereto as Exhibit "11". Plaintiff was given Motrin for the pain. *Id.* On November 16, 2005 the plaintiff filed a Medical Grievance complaining about the lack of medical treatment since his injury in July 2005. *See* a copy of Medical Grievance attached hereto as Exhibit "12".

On December 1, 2005 Dr. DuShuttle authored a report explaining the need for surgery to plaintiff's finger. (The report is incomplete in that the plaintiff has only received the second page of the report in discovery). *See* a copy of report attached hereto as Exhibit "13". On December 1, 2005 Dr. DuShuttle submitted a Provider Consultation form reporting that he was recommending surgery consisting of a fusion,

pinning and a bone graft. *See* a copy of Provider Consultation Report attached hereto as Exhibit "14". On December 2, 2005, Sherel Ott, MSN, FNP-C approved the recommended surgery for the plaintiff. *See* a copy of Consultation Request attached hereto as Exhibit "15". On December 5, 2005 the CMS Op Review Communication Form also indicates approval of the surgery. *See* a copy of CMS OP Review Communication Form attached hereto as Exhibit "16". On December 7, 2005, the plaintiff once again submitted a Request for Medical/Dental Sick Call Services form complaining of the pain in his finger. *See* a copy of Request for Medical/Dental Sick Call Services attached hereto as Exhibit "17". On January 11, 2006 plaintiff submitted a Request for Medical/Dental Sick Call Services form complaining about the pain, his need for surgery and defendants lack of response to his medical needs. *See* a copy of Request for Medical/Dental Sick Call Services attached hereto as Exhibit "18".

On January 30, 2006 the plaintiff wrote a letter to Warden Carroll requesting his assistance in receiving his required surgery. *See* a copy of letter attached hereto as Exhibit "19". On February 16, 2006 Dr. DuShuttle submitted another Provider Consultation Report requesting plaintiff's surgery. *See* a copy of Provider Consultation Report attached hereto as Exhibit "20". On March 14, 2006, Scott S. Altman, Quality Assurance Monitor for CMS sent a letter to plaintiff in response to the January 30, 2006 letter sent to Warden Carroll explaining to the plaintiff that he reviewed plaintiff's concerns raised in his January 30, 2006 letter and found them to be "justified'. *See* a copy of letter attached hereto as Exhibit "21". Even though, the records indicate that plaintiff's surgerical procedure was already approved on December 5, 2005, inexplicably, Mr. Altman explained that CMS was "expediting the

approval" of plaintiff's request. *Id.* On March 24, 2006, the Interdisciplinary Progress Notes indicate that plaintiff's surgery was scheduled for April 19, 2006. *See* a copy Interdisciplinary attached hereto as Exhibit "22". On April 19, 2006, Dr. DuShuttle performed surgery on plaintiff's finger. He fused the left index finger with pinning and synthetic bone graft. *See* Exhibit "4".

On May 5, 2006, the plaintiff's medical records indicate that the defendants diagnosed the plaintiff with an infection of his finger.[5] *See* copy of Interdisciplinary Progress Notes attached hereto as Exhibit "23". On May 11, 2006, the medical records indicate that at the site of the surgery, plaintiff finger had a "slight yellow/green discharge from the pin site". *See* a copy of medical record attached hereto as Exhibit "24". On May 15, 2006, the medical records indicate that the pins in plaintiff finger were removed due to the infection. *See* a copy of medical record attached hereto as Exhibit "25". On May 19, 2006, Dr. DuShuttle provided a CMS OP Review Communication Form CMS that plaintiff requesting whether he should examine the plaintiff a third time since the removal of the pins and the identification of the infection. *See* a copy of CMS OP Review Communication Form attached hereto as Exhibit "26". On May 22, 2006 defendant Rodgers was informed that the plaintiff had reduced swelling in his finger, no temperate change and had a "small open area to the dorsum of the finger. No active drainage". *See* a copy of Provider Consultation Report attached hereto as Exhibit "27". The plaintiff was continued on antibiotics. *Id.* From May 5, 2006 until June 6, 2006 the Interdisciplinary Progress

---

[5] It should be noted that on May 3, 2006, defendant Rodgers was informed by Physician's Assistant, John Meccico that there was <u>no</u> infection in the finger.

Notes indicate that plaintiff was given the antibiotic Ancef for the infection in his finger. *See* copies of Interdisciplinary Progress Notes attached hereto as Exhibit "28". The records further indicate that the antibiotics were stopped in early June, 2006. *See* a copy of Provider Consultation Report attached hereto as Exhibit "29".

On June 6, 2006, Dr. DuShuttle submitted a Provider Consultation Report informing CMS that x-rays taken of plaintiff's finger demonstrated "bone deterioration of the distal phalanger". *Id.* On that same date, the medical records indicate that Dr. DuShuttle recommended that the plaintiff be placed back on antibiotics, further recommending that the plaintiff be examined by an infectious disease physician. *See* a copy of medical report attached hereto as Exhibit "30". Moreover, Dr. DuShuttle concluded that the plaintiff was not in the most sterile environment and changed the finger splint because it was "dirty'. *Id.* On June 7, 2006, defendant Rodgers submitted a presumed diagnosis that concluded that the plaintiff had the infection osteomalitteous and that the x-ray showed "bone deterioration of distal phlanges poss osteomalitteous". *See* a copy of Consultation report attached hereto as Exhibit "31". Defendant Rodgers then referred the plaintiff to Dr Niaz, an infectious disease specialist regarding "osteomalitteous" of left index finger. *Id.* Lastly, defendant Rodgers reported that plaintiff would be seen by Dr. DuShuttle to discuss "options of surgery/amputation". *Id.* On June 7, 2006 plaintiff was examined by Dr. Niaz. *See* a copy of Physician's Orders attached hereto as Exhibit "32". Plaintiff was continued on a course of antibiotics. *Id.* On June 22, 2006 a provider Consultation Report was submitted by Dr. Barnett who concluded that the plaintiff

had an infected second left finger. *See* a copy of Provider Consultation Report attached hereto as Exhibit "33".

On July 6, 2006, an MRI was performed that indicated that the plaintiff had developed osteomalitteous of the distal and middle phalanges of the index finger. *See* a copy of MRI attached hereto as Exhibit "34". Dr. Niaz's findings were facsimiled to Dr. DuShuttle's office by defendant Rodgers eight days later on July 14, 2006. *See* a copy of facsimiled page attached hereto as Exhibit "35'. On July 18, 2006, Dr. DuShuttle submitted a CMS Consultation Report informing CMS that the presumed diagnosis was "osteomalitteous" to the index finger. The Interdisciplinary Progress Notes indicate that the plaintiff was continued on an intravenous of Ancef. *See* a copy of Interdisciplinary Progress Notes attached hereto as Exhibit "36". Throughout the month of July 2006 plaintiff's condition worsened. *Id.*

In August 2006, the plaintiff continued to await the decision whether his finger would be amputated. On August 29, 2006 the medical records indicate that defendants decided that plaintiff's finger required amputation. *See* a copy of Medical Progress Notes attached hereto as Exhibit "37". On October 2, 2006 plaintiff's left index finger was amputated as a result of the osteomalitteous.

Here, the record is clear that the defendants turned a blind eye to the plaintiff's obvious serious medical conditions; i.e. osteomalitteous and a broken index finger. The plaintiff was under the medical care of defendants Rodgers and Durst during the relevant time period. He was in constant pain for the fifteen month period leading to the amputation of his finger. There is sufficient evidence to overcome summary judgment because of the defendants' denial and/or delay of medical treatment causing

the plaintiff to suffer a permanent loss. *See Monmouth,* 834 F.2d at 346; *Natale,* 318 F.3d at 584..

## C. Exhaustion of Administrative Remedies

The defendants argue that plaintiff failed to exhaust his administrative remedies as is required under 42 U.S.C. § 1997e(a) and, therefore, the amended complaint must be dismissed. Plaintiff however has exhausted his administrative remedies. In support of his position, both parties attach exhibits which demonstrate that plaintiff has complied with § 1997e(a).

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Under § 1997e(a) "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner,* 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). If prison authorities however thwart an inmate's efforts to pursue the grievance, administrative remedies may be presumed exhausted, as no further remedies are "available" to him. *Brown v. Croak,* 312 F.3d 109, 112-13 (3d Cir.2002).

The amended complaint alleges that plaintiff filed grievances, letters, and made verbal complaints, but there was no response or solution within a reasonable time. Plaintiff submits exhibits that include grievances filed with Inmate Grievance Coordinators McCreanor and Merson, while letters complaining about plaintiff's injury were written to Warden Carroll and Deputy Warden Pierce. Since the issue of exhaustion turns on the documents related to plaintiff's grievances, the Third Circuit has held that authentic documents may be considered in determining whether plaintiff has met this burden. *Spruill v. Gillis,* 372 F.3d at 223.

The documents submitted by plaintiff indicate that he filed medical grievances for mental health treatment, medications, and for surgerical procedure.

He filed grievances and was moving toward exhaustion when his finger was amputated. Accordingly, plaintiff's administrative remedies are presumed exhausted, as no further remedies are available to him. Accordingly, the court should deny the motion for summary judgment on the issue of failure to exhaust administrative remedies.

### D. Medical Malpractice

Defendants attempt to argue that the plaintiff has asserted a state law claim of medical malpractice, alleging that he had disagreed with the course of treatment. Defendants' argument is misplaced. The plaintiff does not "merely disagree" with the treatment administer by the defendants, but instead argues that the inordinate delay in responding to his broken finger and the initial denial of treatment of the osteomalitteous caused the plaintiff to suffer a permanent loss of his finger. *See*

*Monmouth,* 834 F.2d at 346. Plaintiff's claims are deprivations of his constitutional

rights under the Eighth Amendment, and not as stated pursuant to state law.

In order to successfully allege a Section 1983 action for failure to provide

medical care under the Eighth Amendment, an inmate plaintiff must allege practices

that violate "evolving standards of decency." *Estelle,* 429 U.S. at 102. Medical

malpractice does not become an Eighth Amendment violation merely because the

plaintiff is a prisoner. *Id.* at 105. Instead, the defendant's action must be said to

constitute " 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the

conscience of mankind .' " *Id.* at 106. To meet this standard of deliberate indifference,

the defendant must know of the inmate's condition and disregard an excessive risk of

the inmate's health or safety. *Farmer,* 511 U.S. at 837.

It is clear that mere medical malpractice is insufficient to present a

constitutional violation. *See Estelle,* 429 U.S. at 106; *Durmer*, 991 F.2d at 67. Prison

authorities are given extensive liberty in the treatment of prisoners. *See Inmates of*

*Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir.1979); *see also White,* 897

F.2d at 110 ("[C]ertainly no claim is stated when a doctor disagrees with the

professional judgment of another doctor. There may, for example, be several

acceptable ways to treat an illness."). However, here the plaintiff asserts constitutional

deprivations involving the deliberate indifference to the plaintiff's serious medical

need and not his disagreement with the type or method of treatment.

### E. Punitive Damages

CMS asks this Court to decide, on a motion for summary judgment, that punitive damages are not applicable to plaintiffs' actions. The Court should find that dismissal of plaintiff's punitive damage claims against at this juncture is premature.

The Third Circuit has found that "a jury [may] assess punitive damages under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Brennan v. Norton,* 350 F.3d 399, 428 (3d Cir.2003) (*citing Smith v. Wade,* 461 U.S. 30, 56 (1983)). The Third Circuit also has held that a plaintiff who seeks punitive damages in a § 1983 action must show that the defendant's conduct was "at a minimum, reckless or callous," and that "[p]unitive damages might also be allowed if [defendant's] conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard." *Brennan,* 350 F.3d at 428-429.

Should this Court find that a reasonable jury could conclude that defendants were deliberately indifferent to the serious medical needs of the plaintiff and should a jury find that defendants indeed violated the plaintiffs' Eighth Amendment rights, the Court may conclude that punitive damages are warranted. The Court should therefore reserve the right to rule on the issue of punitive damages in a later stage of this litigation.

## V. CONCLUSION

For the foregoing reasons, the plaintiff requests this Honorable Court deny

summary judgment for individual defendants and deny the CMS request for summary

judgment on plaintiff's claims of municipal liability.

Respectfully submitted,

August 20, 2008

*s/s Michael Pileggi*
Michael Pileggi, Esquire
303 Chestnut Street
Philadelphia, PA 19106
Telephone: (215) 627-8516
Fax: (215) 627-5105

**IN THE UNITED STATES DISTRICT
COURT OF DELAWARE**

| | |
|---|---|
| **ANTHONY PORTERFIELD** | : |
| **Plaintiff** | : |
| **vs.** | : C.A. #07- 147 - SLR |
| **CORRECTIONAL MEDICAL SERVICES (CMS) et al.** | : |
| **Defendants** | : |

**ORDER**

AND NOW, this        day of        2008, upon consideration of defendants,

Correctional Medical Services, Inc., Dr. Dale Rodgers and Dr. Durst's Motion for

Summary Judgment and plaintiff's response thereto, it is hereby **ORDERED** and

**DECREED** that the said Motion is **DENIED**.

BY THE COURT:

_____
                                                            J.



**Mid-Delaware Imaging**

DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DE 19977

*19*

NAME:       ANTHONY PORTERFIELD
DOB:
SBI#:         416473

DATE OF EXAMINATION:       09/16/05.

CLINICAL INFORMATION:       TRAUMA.

<u>LEFT INDEX FINGER:</u>

Examination of left index finger shows displaced avulsion fracture at the base of distal phalanx and subluxation of corresponding interphalangeal joint with some overlying soft tissue swelling.

M 9/20/05

MP/glr

Mahendra Parikh, MD

710 South Queen Street
Dover, Delaware 19904
302-734-9888

# MEMO
## CORRECTIONAL MEDICAL SERVICES

TO: Porterfield, Anthony  Shu19 BU-4

FROM: SHU/MHU MEDICAL

DATE: 09/29/05

REF: x-ray  Left Index finger

Just wanted to let you know that your x-ray results

Came back normal findings.

A Ott NP

## Provider Consultation Report
### (Complete and return in SEALED envelope with Correctional Officer)

Reference #: _____

Inmate: Anthony Porterfield        Inmate ID: 416473        Date of Service: 12/1/05

Institution: DCC                   Institution ID: _____        DOB: ~~███████~~

Provider: Dr DuShuttle             Provider Type: _____        Phone: _____

Location: _____

### ***See Attached Consultation Request for Health Services Authorized***

*For security reasons, inmates must NOT be informed of recommended treatment or possible hospitalization. Due to security consideration, all recommended tests and treatments are to be scheduled by CMS.*

**Review of Case:** (Chief complaint, exam findings etc.)

Rt index
⊕ pain distal phalanx
⊕ swelling
mild deformity.
full Rom c̄ pain

x-ray: displaced fx
distal phalanx Rt index
c̄ volar subluxation

**Diagnosis and Prescription Suggestions** (To be reviewed by CMS Medical Director)

Displaced intraarticular fracture distal phalanx Rt index
c̄ volar subluxation

Can equivalent medication substitution be used? ☐Yes ☐No        Follow-up needed? ☑Yes ☐No

If follow-up needed, explain:

Surgery was recommend
Fusion c̄ pinning c̄ bone graft

Provider Name (print): Richard DuShuttle   Provider Signature: _____   Date: 12-1-05

### To be completed by CMS provider

Recommendation after review of consultant's report:   ☐No further action        ☐Implement the following

Implement:

CMS Provider Name (print): _____   CMS Provider Signature: _____   Date: _____

ANTHONY PORTERFIELD

04/19/06:  Kent General Hospital

PREOP DX: DISPLACED INTRA-ARTICULAR FRACTURE, DISTAL
PHALANX, LEFT INDEX FINGER WITH VOLAR SUBLUXATION

POSTOP DX: SAME

SURGEON:   RPD

OPERATION:  FUSION, LEFT INDEX FINGER WITH PINNING AND
SYNTHETIC BONE GRAFT WITH USE OF C-ARM IMAGE


RPD/it

# DELAWARE DEPARTMENT OF CORRECTIONS
# REQUEST FOR MEDICAL/DENTAL SICK CALL SERVICES
# FACILITY:  DELAWARE CORRECTIONAL CENTER
### This request is for (circle one): (MEDICAL) DENTAL  MENTAL HEALTH

Anthony Porterfield
Name (Print)

19 B-u-u
Housing Location

~~Date of Birth~~

416473
SBI Number

8-2-05
Date Submitted

Complaint (What type of problem are you having)?  I have a broken finger
and have not receive any medical ~~treatment~~
it's been over a month

Anthony Porterfield
Inmate Signature

8-2-05
Date

### The below area is for medical use only.  Please do not write any further.

S:

O:    Temp:_____    Pulse: _____    Resp: _____    B/P: _____    WT: _____

A:

P:

E:

_____
Provider Signature & Title

_____
Date & Time

3/1/99 DE01
FORM#:
MED
263

# DELAWARE DEPARTMENT OF CORRECTIONS
## REQUEST FOR MEDICAL/DENTAL SICK CALL SERVICES
### FACILITY:  DELAWARE CORRECTIONAL CENTER
This request is for (circle one):  (MEDICAL)  DENTAL  MENTAL HEALTH

Name (Print): Anthony Porterfield

Housing Location: 19 B-4-4

Date of Birth: ~~[redacted]~~

SBI Number: 416473

Date Submitted: 8-14-05

Complaint (What type of problem are you having)?  My left index finger is broken. This is my third sick call request I am in pain day and night.

Inmate Signature: anthony Porterfield

Date: 8-14-05

**The below area is for medical use only.  Please do not write any further.**

S:

O:  Temp:____  Pulse:____  Resp:____  B/P:____  WT:____

A:

P: Noted finger disfigured Noted at call slip. may we order an X-Ray – He has no pain. 9/m says he hurt finger on a fight that happened approx 1 month ago.

E:

Provider Signature & Title: _____

Date & Time: 8/21/05

3/1/99 DE01
FORM#:
MED
263

DCC Delaware Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

# GRIEVANCE REPORT

## OFFENDER GRIEVANCE INFORMATION

| | | | | | |
|---|---|---|---|---|---|
| **Offender Name :** | PORTERFIELD, ANTHONY | **SBI#** | : 00416473 | **Institution** | : DCC |
| **Grievance #** | : 16660 | **Grievance Date** | : 08/20/2005 | **Category** | : Individual |
| **Status** | : Unresolved | **Resolution Status :** | | **Resol. Date** | : |
| **Grievance Type:** | Health Issue (Medical) | **Incident Date** | : 08/20/2004 | **Incident Time :** | |
| **IGC** | : McCreanor, Michael | **Housing Location :** | Bldg 19, Upper, Tier B, Cell 4, Single | | |

## OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** I/M Porterfield claims to have a broken left index finger and that when he tells a nurse about it all he is told is to submit a sick call slip.

**Remedy Requested** : To receive necessary medical treatment

## INDIVIDUALS INVOLVED

| Type | SBI # | Name |
|---|---|---|
| | | |

**Inmate Copy**

## ADDITIONAL GRIEVANCE INFORMATION

| | | |
|---|---|---|
| **Medical Grievance :** YES | **Date Received by Medical Unit :** | 09/01/2005 |
| **Investigation Sent** : 09/01/2005 | **Investigation Sent To** | : Dunn, Lee Anne |
| **Grievance Amount :** | | |

# DELAWARE DEPARTMENT OF CORRECTIONS
## REQUEST FOR MEDICAL/DENTAL SICK CALL SERVICES
### FACILITY: DELAWARE CORRECTIONAL CENTER
#### This request is for (circle one): (MEDICAL) DENTAL MENTAL HEALTH

Name (Print): Anthony Porterfield

Housing Location: 19 B-u-u

Date of Birth: ~~(blacked out)~~

SBI Number: 466473

Date Submitted: 8-23-05

Complaint (What type of problem are you having)? My left index finger is broken this is my fourth sick call request I am in Constant Pain

Inmate Signature: Anthony Porterfield

Date: 8-23-05

**The below area is for medical use only. Please do not write any further.**

**S:**

**O:** Temp:_____ Pulse:_____ Resp:_____ B/P:_____ WT:_____

**A:**

**P:** X-Ray has been ordered - Scheduled for 9/9/05

**E:**

Provider Signature & Title: Shonwealh

Date & Time: 8/30/05

3/1/99 DE01

FORM#:
MED
263

# DELAWARE DEPARTMENT OF CORRECTIONS
## REQUEST FOR MEDICAL/DENTAL SICK CALL SERVICES
## FACILITY: DELAWARE CORRECTIONAL CENTER
### This request is for (circle one):  MEDICAL  DENTAL  MENTAL HEALTH

Name (Print): Anthony Porterfield

Housing Location: Bld 19 . B . 4-4

Date of Birth: ~~(redacted)~~

SBI Number: 416473

Date Submitted: 9-30-05

Complaint (What type of problem are you having)? I received X-Ray on my left index finger on 9-16-05. I have not been inform of the result of the X-Ray. My finger in still very much in pain. Thank you for your time in this matter.

Inmate Signature: Anthony Porterfield

Date: 9-30-05

**The below area is for medical use only.  Please do not write any further.**

S: _Resolved 10/3/05_

O:  Temp:____  Pulse:____  Resp:____  B/P:____  WT:____

A: _Seen by Nurse Practioner OH_

P:

E:

_____
Provider Signature & Title

_____
Date & Time

3/1/99 DE01
FORM#:
MED
263

Faxed 10-3-05

## CONSULTATION REQUEST

☑ Off-site      ☐ On-Site Clinic   ☐ Telephone                Reference #: _____

☐ Urgent        ☐ Routine          ☐ Retro Request           Date of Request: _____

Inmate: **Porterfield, Anthony**   Inmate ID#: **416473**     DOB: _____

Site: **DCC**                        Cost Center: _____   DOI: _____   EDR: _____

3rd Party Insurance: (VA, Workmen's Comp. Federal, Interstate Compact, etc.): _____

*For security reasons, inmates must NOT be informed of date, time or location of proposed treatment or possible hospitalization. Authorization and payment is provided ONLY for requested procedures or treatments of life-threatening conditions. Prior review/discussion with Medical Director is required for additional treatment, procedures and hospitalizations.*

Procedure/Test/Specialty Service Requested: **Orthopaedic**

Initial Visit or F/U? _____   F/U#: _____

Provider: _____

| | |
|---|---|
| Presumed Diagnosis: **Displaced Avulsion Fracture Lt Index Finger** | Date of Onset: |

Describe Signs & Symptoms: **States had his hand caught in door back in July when C.O.'s was closing his cell.**

Exam Data/Objective Findings: **Edema to distal 4th Interphalanges joint to Lt index Finger**

Lab & Xray Data: **X-ray showed - Lt index finger shows displaced avulsion Fracture at the base of distal phalanx + subluxation of corresponding interphalangeal joint c̄ some overlying soft tissue swelling.**

Current Medications: **Effexor XR 300mg 337.5  Thorazine 100mg**

Failed Outpatient Therapies: **N/A**

Enrolled in Chronic Care Clinic (s)? ☑ Yes ☐ No   Which Clinic(s)? **Pschy**

Other Diagnosis: **PTSD, MDD**

Comments:

Site Medical Provider: _____ SHEREL A. OTT, MSN, FNP-C    Signature **Sherel A Ott msn fnp C**   Date: **10-3-05**

Nurse: _____   Date: _____

Site Medical Director: _____   Date: _____

| | |
|---|---|
| Criteria Source: ☐ M&R ☐ InterQual | Notes: |
| ☐ Other(specify): | |
| Criteria Met: ☐   Criteria Not Met: ☐   More Info Needed ☐ | |
| UM Review #: | |
| Initials: ___ Date: ___ | |

*Note: Notify physician or midlevel practitioner immediately if unable to obtain appointment within 4 weeks. If service is not completed within 4 weeks, have patient re-evaluated by physician or midlevel practitioner to determine if service is still necessary and appropriate.*

Correctional Medical Services

# DELAWARE DEPARTMENT OF CORRECTIONS
## REQUEST FOR MEDICAL/DENTAL SICK CALL SERVICES
## FACILITY: DELAWARE CORRECTIONAL CENTER
### This request is for (circle one):  MEDICAL  DENTAL  MENTAL HEALTH

Anthony Porterfield _____    1 8  B- 4-4 _____
**Name (Print)**                                  **Housing Location**

▬▬▬       416473       11-3-05
**Date of Birth**        **SBI Number**       **Date Submitted**

Complaint (What type of problem are you having)?  I need some medicine
to give me some relief from pain I am suffering from
doing my broken finger. I am waiting to see the specialist
who must break and reset my finger and put it in a cast.

_____       _____
**Inmate Signature**                            **Date**

### The below area is for medical use only.  Please do not write any further.

**S:** _____

_____

**O:** Temp:____  Pulse: ____  Resp: ____  B/P: ____  WT: ____

_____

**A:** _____

_____

**P:** Reordered Motrin 11/4/05 ( Nurse Practioner OK )

_____

**E:** _____

_____       11/14/05
**Provider Signature & Title**             **Date & Time**

**3/1/99 DE01**
FORM#:
**MED
263**

## FORM #585

## MEDICAL GRIEVANCE

FACILITY: _DCC_

DATE SUBMITTED: _11-16-05_

INMATE'S NAME: _Anthony Porterfield_

SBI#: _416473_

HOUSING UNIT: _19(B4-4)_

CASE #: _20859_

//////////////////////////////////////////////////////////////////////////////////////////////////////////

### SECTION #1

DATE & TIME OF MEDICAL INCIDENT: _7-07-05_   time _21:07_

TYPE OF MEDICAL PROBLEM:

_My left index finger is broken and has been sense the 7 of July. After having this confirm by the doctor on 10-03-05 and again on the 11-04-05 at sick call I have yet to receive the necessary medical treatment. I am walking around in severe pain. I need my finger fix_

GRIEVANT'S SIGNATURE: _Anthony Porterfield_     DATE: _11-16-05_

ACTION REQUESTED BY GRIEVANT: _____

DATE RECEIVED BY MEDICAL UNIT: _____

**RECEIVED**

NOV 2 1 2005

Inmate Grievance Office

**NOTE: EMERGENCY MEDICAL CONDITIONS WILL TAKE PRIORITY. OTHERWISE, MEDICAL GRIEVANCES WILL BE ADDRESSED AT THE WEEKLY MEDICAL COMMITTEE MEETING.**

**ANTHONY PORTERFIELD**                    **PAGE 2**

**12/01/05: CONTINUED...............)**


Surgery would consist of a fusion.  I have explained to him that the fracture is already healed so the finger would need to be re-broken and a fusion with


pinning with bone graft performed.  The procedure was explained in detail to the patient.  The pros and cons were discussed.  He was given ample opportunity to ask questions and all questions were answered.  After a thorough discussion, the patient states he would like to proceed with surgery. I have explained to the patient that I will make my recommendation to the correctional center and he will be notified of their decision.  RPD/cl/it

## Provider Consultation Report
(Complete and return in SEALED envelope with Correctional Officer)

Reference #: _____

Inmate: Anthony Porterfield    Inmate ID: 446473    Date of Service: 12/1/05

Institution: DCC    Institution ID: _____    DOB: ▓▓▓▓▓▓

Provider: Dr Dushuttle    Provider Type: _____    Phone: _____

Location: _____

### ***See Attached Consultation Request for Health Services Authorized***

*For security reasons, inmates must NOT be informed of recommended treatment or possible hospitalization. Due to security consi...ration, all recommended tests and treatments are to be scheduled by CMS.*

**Review of Case:** (Chief complaint, exam findings etc.)

① Murder
② pain distal phalanx
③ swelling
mild deformity-
full Rom c̄ pain

X-ray: displaced fx
distal phalanx ② ...dey
c̄ volar subluxat

**Diagnosis and Prescription Suggestions** (To be reviewed by CMS Medical Director)

Displaced intraarticular fracture distal phalanx ② ind
c̄ volar subluxation

Can equivalent medication substitution be used? ☐Yes ☐No    Follow-up needed? ☑Yes ☐No

If follow-up needed, explain:

Surgery was recommend
Fusion c̄ pinning c̄ bone graft

Provider Name (print): Richard Dushuttle    Provider Signature: _____    Date: 12-1...

*To be completed by CMS provider*

Recommendation after review of consultant's report: ☐No further action    ☑Implement the follo...

Implement:

Surgery frr CT indef repair

CMS Provider Name (print): _____    SHEREL A. OTT, MSN, FNP-C    CMS Provider Signature: _____    Date: 12/2/...

## CONSULTATION REQUEST

☒Off-site  ☐On-Site Clinic  ☐Telera ana.                    Re   ice #:
☐Urgent   ☐Routine        ☐Retro Request                    Date of Request: _12/2/__
Inmate: PORTERFIELD, ANTHONY   Inmate ID#: _416 473_        DOB: _____
Site: _Dcc_                                                 DOI: _____ EDR: ____
3rd Party Insurance: (VA, Workmen's Comp. Federal, Interstate Compact, etc.): _____

*For security reasons, inmates must NOT be informed of date, time or location of proposed treatment or possible hospitalization.  certain and payment is provided ONLY for requested procedures or treatments of life-threatening conditions. Prior review/discussion with Me cal Director is required for additional treatment, procedures and hospitalizations.*

Procedure/Test/Specialty Service Requested: _Fusion E Raining a Bone Crafts LT Index Fi nee_
Provider: _D Dishotsko_          Initial Visit or F/U? _____  F/U#: ____

Presumed Diagnosis:
**DISPLACED INTRAARTICULAR Fx Distal Phalanx ① INDEX E Volor Ta (subluxation)**

Describe Signs & Symptoms:                              Date of Onset: ____
N/A

Exam Data/Objective Findings:
N/A

Lab & Xray Data:
N/A

Current Medications:
N/A

Failed Outpatient Therapies:
N/A

Enrolled in Chronic Care Clinic (s)?  ☐ Yes  ☐ No      Which Clinic(s)?
Other Diagnosis:

Comments: _see attached Consultation Report_

Site Medical Provider: _SHEREL A. OTT, MSN, FNP-C_  Signature: _Sherel A Ott_  Date: _12/27/0?_

Nurse: _____ Date: ____  Site Medical Director: _____ Date: ____

Criteria Source:  ☐ M&R   ☐ InterQual            Notes:
☐ Other(specify): ____
Criteria Met: ☐   Criteria Not Met: ☐   More Info Needed ☐
UM Review #:
Initials: _____ Date: ____

*Note: Notify physician or midlevel practitioner immediately if unable to obtain appointment within 4 weeks. If service is not completed within 4 weeks, have patient re-evaluated by physician or midlevel practitioner to determine if service is still necessary and appropriate.*

19

## CMS OP Review Communication Form

Number of pages: _____
Institution: _____ DCC _____
Inmate: _____ Porterfield, Anthony _____
Requested Service: _____ Burlow c Pinning + Bone Graft Ly _____

Date Received: 12/5/05 Date Reply 12/6/05
ID#: 966403

All of the information provided was reviewed and criteria applied using the nationally accepted Milliman and Robertson Healthcare Management Guidelines, CMS Pathways, Physician advisor review, InterQual, or Saunders Manual of Medical Practice. Application of these guidelines is used to balance aggregate patient care quality, medical indicators, safety, and to record outcomes. This is not an approval process.

## Utilization Management Review/Recommendation:

_____ Deferred

_____ Criteria Auto Not Met - *Response not received from site within 14 days.*

____✓____ Request additional information *(If not received within 14 days, an automatic "not met" is assigned, and a new request must be submitted)*

| | | |
|---|---|---|
| Differential Diagnosis | _____ | Symptoms/Signs _____ |
| Complete Physical Exam | _____ | Clinical Findings _____ |
| History | _____ | Precipitating Injury _____ |
| Date of Onset | _____ | Other Dx _____ |
| Previous Consult Data | _____ | Current/Past Meds: _____ |
| Current Diagnostic Results | _____ | start date, dosage, |
| Neuro Exam/Deficits | _____ | frequency, duration |
| Functional Impairment | _____ | Pt. compliance with |
| Estimated Release Date | _____ | prescribed regimen |
| Failed Conservative Therapy | _____ (Clarify) | |
| Effect on ADL's | _____ (Current) | |

Comments: _Please send current ortho notes._
_____
_____
_____

Criteria Used for Review:     M&R _____     Other _____
                              InterQual: _____

Site Response: *(Please refer to UM Nurse Reviewer if provider has response/questions.)*
_Ortho Consult report RESENT_
                                    _approved_
_____

*All data reviewed will be used to provide statistical information relating to volume and resource utilization - This is a confidential communication document not for disclosure or placement in the medical record. Do not delay treatment that is medically necessary, urgent or emergent.

*The provider requesting the referral is responsible for the final determination and outcome.

Date Faxed 12/5   Initials DB

# DELAWARE DEPARTMENT OF CORRECTIONS
## REQUEST FOR MEDICAL/DENTAL SICK CALL SERVICES
### FACILITY: DELAWARE CORRECTIONAL CENTER
This request is for (circle one):  MEDICAL  DENTAL  MENTAL HEALTH

Anthony Porterfield
**Name (Print)**

19 B. U>U
**Housing Location**

~~_____~~
**Date of Birth**

416473
**SBI Number**

12-7-05
**Date Submitted**

Complaint (What type of problem are you having?) I need some medicine
for relief of Pain do to my broken finger. I am waiting
to be schedule for surgery.

Anthony Porterfield
**Inmate Signature**

12-7-05
**Date**

**The below area is for medical use only.  Please do not write any further.**

S: Referral MCP - 12/8/05

O:   Temp:_____   Pulse:_____   Resp:_____   B/P:_____   WT:_____

A:

P: Motrin refilled

E:

_Provider Signature & Title_

12/8/__
_Date & Time_

3/1/99 DE01

FORM#:

MED
263

# DELAWARE DEPARTMENT OF CORRECTIONS
## REQUEST FOR MEDICAL/DENTAL SICK CALL SERVICES
### FACILITY: DELAWARE CORRECTIONAL CENTER
**This request is for (circle one):  MEDICAL  DENTAL  MENTAL HEALTH**

Anthony Porterfield

_Name (Print)_

19 B-4-4

_Housing Location_

416473

_SBI Number_

1-11-06

_Date Submitted_

_Date of Birth_

Complaint (What type of problem are you having?) I need medicine to give me some relief do to a broken finger I've been suffering from sense July of '05. The specialist said that I need Surgery.

anthony Porterfield

_Inmate Signature_

1-11-06

_Date_

**The below area is for medical use only.  Please do not write any further.**

S: 1/13/06 —

O:   Temp:_____   Pulse: _____   Resp: _____   B/P: _____   WT: _____

A:

P:  resolved 1/13/06

E:

_Provider Signature & Title_

1/13/06

_Date & Time_

3/1/99 DE01

FORM#:

**MED**

263

SHU19  1-30-06
BU4

Warden Carroll. This is my second time writing to you regarding this matter Seeking your assistance. I am and have been in need of medical treatment for 7 months. I have a broken finger, I was taken to see a specialist over two months ago who confirm that my finger was broken, that I was in need of immediate surgery.

with all do respect Sir I am walking around with a broken bone for all this time, that happens to be very painful MY concern at this time is weather the institution is going to make sure that I receive the necessary medical treatment that I need

Anthony Porterfield
416473 19 B·4·4

RECEIVED

FEB 2 1 2006

DEPUTY WARDEN I

RECEIVED

JAN 3 0 2006

DCC Warden's Office

*Att*
*LeeAnn* ✓

# Provider Consultation Report
### (Complete and return in SEALED envelope with Correctional Officer)

Reference #: _____

Inmate: Anthony Porterfield    Inmate ID: 416473

Institution: _____

Provider: Aushuttle

Institution ID: _____

Provider Type: _____

Date of Service: 2/16/06

DOB: _____

Phone: _____

Location: _____

### ***See Attached Consultation Request for Health Services Authorized***

*For security reasons, inmates must NOT be informed of recommended treatment or possible hospitalization. Due to security consideration, all recommended tests and treatments are to be scheduled by CMS.*

---

**Review of Case:** (Chief complaint, exam findings etc.)

Exam. Same
⊕ pain ⊕ swelling
⊕ deformity

---

**Diagnosis and Prescription Suggestions** (To be reviewed by CMS Medical Director)

Displaced intra-articular ft distal phalanx ⊕ index

---

Can equivalent medication substitution be used? ☐Yes  ☐No    Follow-up needed? ☑Yes  ☐No  Surgery

If follow-up needed, explain:

Surgery Required - fusion
Please contact "amy" when surgery approved

Provider Name (print): _____    Provider Signature: _____    Date: 2-17-06

---

### To be completed by CMS provider

Recommendation after review of consultant's report:    ☐No further action        ☐Implement the following

Implement:

---

CMS Provider Name (print): _____    CMS Provider Signature: _____    Date: _____

---

Correctional Medical Services
File: 401B 9.9.04 MRS shared drive DMRS folder

401B 9/9/04



**CMS**
DEDICATED PEOPLE
MAKING A DIFFERENCE
Correctional Medical Services

Anthony Porterfield
SBI # 416473 SHU 19 BU4
1181 Paddock Road
Smyrna, DE 19977

14 March 2006

Dear Mr. Porterfield,

I received your letter regarding your medical treatment dated 30 January 2006. I have reviewed your concern and find it to be justified.

We are expediting the approval of your request and expect to have your concern resolved by mid April, 2006.   I will keep you informed of any delays we have in obtaining the care your have requested.

Correctional Medical Services is committed to providing the highest level of care to everyone in our institutions.   I apologize for the problems you have had in the past and encourage you to help us meet everyone's healthcare needs by helping us identify problems and concerns with the delivery of healthcare in the prisons.

Once again, thank you for bringing this matter to my attention.

Your Partner in Healthcare,

Scott S. Altman
Quality Assurance Monitor
Correctional Medical Services

CC:  Warden Thomas Carroll
       Medical Record

## INTERDISCIPLINARY PROGRESS NOTES

| DATE | TIME | DISCIPLINE | NOTES SHOULD BE SIGNED WITH NAME AND TITLE |
|------|------|-----------|-------------------------------------------|
| 2/14/06 | 1100 | Nsg | Called A. Jacobson regarding non-form. Waiting for response. _____ Shaweah |
| 3-24-06 | | | Provider Note |
| | | | Scheduled for surgery 4/19/06. CBC c̄ diff, SMA 24, EKG & U/A & CXR ordered pre-op |
| | | | SHEREL A. OTT, MSN, FNP-C   John M Ottman Fork |
| 3/25/06 | 1815 | Nsg | I/M read & signed pre op instructions HT 5'10 WT 186 BP 147/86 Charlene |
| 3/27/06 | 1525 | Nsg | D0308  303560  Urine obtained for U/A and C/S _____ Shaweah |

| NAME–Last | First | Middle | Attending Physician | Record No. | Room/Bed |
|-----------|-------|--------|--------------------|-----------|---------|
| Porterfield, Anthony | | | | 416473 | |

FCM-002

**INTERDISCIPLINARY PROGRESS NOTES**
☐ Continued on Reverse

**Correctional Medical Services**
**Inter Disciplinary Progress Notes**

Patient Name: _Porterfield, A_    ID#: 416473    Institution: _DCC_

| Date | Time | Notes | Signature |
|------|------|-------|-----------|
| 5/2/06 | 1745 | I/M at cell door, alert c̄ verbal c/o pain to L index finger - Loratab admin p.o. - drsng to L index finger intact → hollering out at staff reasoning not understood | Kathryn Kratz |
| 5/3/06 | 2:15pm | MD Note pt seen by ortho today. pleased c̄ pt wnd care. read ortho consultants note. Wants f/u in 4wks for xray & poss. removal of pins. Consult written for f/u. | Dale Rodgers, MD |
| 5/5/06 | 0355 | Awake c̄ verbal c/o mod pain to L index finger Ø S&S of infection at site mild edema. - bandage intact admin Loratab p.o. | Kathryn Kratzer RN |
| 5/5/06 | 1100 | A met in room NoC/o. Lt index finger clean + dry Bandaids to area. WB S&S of Infection Noted circulation good. alt. fine integrity. Plan continue Rx Chart prn | C. Damm |
| 5/6/06 | 0900 | Condition finger unchanged sleeping in bed NoC/o | C. Damm |

7113 Rev  4

**NAME:** Anthony Porterfield

**DATE:** 5/11/06

**SUBJECTIVE:** the patient returns to our office today for a follow-up on a status post fusion, left index finger with pinning and synthetic bone graft. The patient states that he has had discharged to the finger and is also experiencing swelling to the finger. He states that the discharge has been around the pin site.

**REVIEW OF TESTS:** x-rays of patients left index finger were taken at our office today. There is no change from his previous x-ray.

**PHYSICAL EXAM:** left index finger: the pins appear to be in proper alignment. Well when pressing around the pin site, there was a slight yellow/green discharge from the pin site. The patient has positive swelling around the DIP joint and positive erythema. There does not appear to be any temperature change. There is no neuro or sensory deficit appreciated.

**DIAGNOSIS:** status post fusion, left index finger with pinning and synthetic bone graft

**TREATMENT:** I would like the patient to continue taking cipro twice a day. I would also like him to continue the peroxide soaks. We would like to see him early next week for re-evaluation. The patient understands that if he sees any streaking going up the left arm, he is to advise somebody right away. If the patient has any problems or concerns prior to his next visit, Department of Corrections is to give our office a call. Case discussed with Dr. DuShuttle.

**JM**

**ANTHONY PORTERFIELD** 

**05/15/06 DOVER:**

Patient is seen for re-evaluation.  He is an inmate accompanied by prison guards.

**OBJECTIVE EXAMINATION LEFT INDEX FINGER:**There is obvious infection at the pin site.  Positive swelling.  There has been no disturbance of the pins.  No neuro or sensory deficits appreciated.

Due to the infection the pins were removed.

**DIAGNOSIS:**S/P fusion, left index finger with pinning and synthetic bone graft
         S/P pin removal

**TREATMENT:**I am not pleased that the pins had to be removed early due to infection.  The patient's results will not be as good.  A velcro finger splint was applied.  IV antibiotics, Keflex 1 gram Q8 hrs was ordered.  The patient will return in one week  .        RPD/cl

To Jessica 6/6/06
9

## *CMS OP Review Communication Form*

Number of pages: 1
Institution: DCC     Date Received 5/19/06   Date Reply 5/6/06
Inmate: Porterfield, Anthony     ID#: 416473

Requested Service: Ortho F/u   Dr Durhottle

*All of the information provided was reviewed and criteria applied using the nationally accepted Milliman and Robertson Healthcare Management Guidelines, CMS Pathways, Physician advisor review, InterQual, or Saunders Manual of Medical Practice. Application of these guidelines is used to balance aggregate patient care quality, medical indicators, safety, and to record outcomes This is not an approval process.*

## Utilization Management Review/Recommendation:

_____ Deferred

_____ Criteria Auto Not Met - *Response not received from site within 14 days.*

✓ Request additional information *(If not received within 14 days, an automatic "not met" is assigned, and a new request must be submitted)*

| | | | | |
|---|---|---|---|---|
| Differential Diagnosis | _____ | Symptoms/Signs | _____ |
| Complete Physical Exam | _____ | Clinical Findings | _____ |
| History | _____ | Precipitating Injury | _____ |
| Date of Onset | _____ | Other Dx | |
| Previous Consult Data | _____ | Current/Past Meds: | |
| Current Diagnostic Results | | start date, dosage, | |
| Neuro Exam/Deficits | _____ | frequency, duration | _____ |
| Functional Impairment | _____ | Pt. compliance with | |
| Estimated Release Date | _____ | prescribed regimen | _____ |
| Failed Conservative Therapy | _____ (Clarify) | | |
| Effect on ADL's | (Current) | | |

Comments: Fared 5/19/06
Please advise if ortho visit F/u a duplicate or 3rd F/u
needed. Returned F/u for 5/10/06 + 5/17/06.

Kathy

Criteria Used for Review:     M&R _____     Other _____
InterQual _____

Site Response: *(Please refer to UM Nurse Reviewer if provider has response/questions.)*

This will be pts 2nd post op visit. Since
finger infection + removal of pins +
being on IV Antibiotics (consult written 5/23/06)

*All data reviewed will be used to provide statistical information relating to volume and resource utilization · This is a confidential communication document not for disclosure or placement in the medical record. Do not delay treatment that is medically necessary, urgent or emergent.*

5/26/06 KN

*The provider requesting the referral is responsible for the final determination and outcome.*

## Provider Consultation Report
### (Complete and return in SEALED envelope with Correctional Officer)

Reference #:_____

Date of Service: 5·22·06

Inmate: Portenfield, Anthony

Inmate ID: 416473

DOB: ████████

Institution: DCC

Institution ID: 6365

Phone:_____

Provider: DuShuttle

Provider Type: Ortho

Location:_____

### ***See Attached Consultation Request for Health Services Authorized***

*For security reasons, inmates must NOT be informed of recommended treatment or possible hospitalization. Due to security consideration, all recommended tests and treatments are to be scheduled by CMS.*

**Review of Case:** (Chief complaint, exam findings etc.)

① index – signs of improvement. Less swelling small open area, no active drainge. No redness or temp change

**Diagnosis and Prescription Suggestions** (To be reviewed by CMS Medical Director)

S/P fusion ① index
S/P pin removal

Can equivalent medication substitution be used? ☐Yes  ☐No    Follow-up needed? ☑Yes  ☐No

If follow-up needed, explain: Continue IV antibiotics, Keflex, Ioran @ 8 hrs
Continue = splint   RTD! 1 wk

Provider Name (print): JOHN MERCICO PAC   Provider Signature: John Mercico PA-C  Date: 5-22-06

### To be completed by CMS provider

Recommendation after review of consultant's report:  ☐No further action    ☑Implement the following

Implement: consult written for f/u in 1 week

CMS Provider Name (print): Dr. Rodgers   CMS Provider Signature: _____  Date: 5/23/06

401B 9/9/04

**Correctional Medical Services**
**Inter Disciplinary Progress Notes**

Patient Name: Porterfield, Anthony     ID#: 416473     Institution: DCC

| Date | Time | Notes | Signature |
|------|------|-------|-----------|
| 7-30-06 | NSG 1400 | P: ® Fractured finger, acute pain. I&E: Changed / Applied large bandaid to L. index finger. Staples & stitches intact, no erythema, no edema, no drainage & no pallor. I/M rated pain as "6" on pain scale 1-10. Adm ÷ lortab per MAR. VS @ 0800 were 119/75, 96.4, 93, 18, 96% SaO₂ on r.A. Instructed I/M to not get band-aid wet, shook head "yes" in agreement. N.Mapis, RN | |
| 5/1/06 2:25pm | | MD Note. POD #11 - pt seen today. No complaints presently. ℗ index finger c+D O.d/c sutures intact, hardware intact; ROM pretty good; ⊖ erythema cont. current tx. Awaiting flu appt. Dale Rodgers, MD | |
| 5/1/06 Nsg | Doc 0900 | VS this A.M. 98/60 - 99.6 - 80-20 97% PA. Index finger as above Seen by Dr. Rodgers. keeping Dressing dry & intact. Yo. some sternum Discomfort this A.M. + pain; alt. comfort. Plan Continue tx. Chart prn | Damm |
| 5/2/06 Nsg | Doc 0900 | VS lying in bed 88/54 - 97.4 - 94-20 97% PA. #1 Index finger Dressing dry + intact. Ø signs infection noted. Alt. skin integrity Plan Continue R+ Chart prn | Damm prn |

7113 Rev 03/04

**Correctional Medical Services**
**Inter Disciplinary Progress Notes**

Patient Name: Porterfield, A     ID#: 416473     Institution: DCC

| Date | Time | Notes | Signature |
|------|------|-------|-----------|
| 5/2/06 | 1745 | I/M at cell door alert c̄ verbal c/o pain to (R) index finger. Loratab i admin p.o. - dressg to (R) index finger intact & hollering out at staff, reasoning not understood. | Kathryn Kratger |
| 5/3/06 2:15pm | | MD Note. pt seen by ortho today. pleased c̄ pt wnd care. read ortho consultants note. wants f/u in 4 wks for xray & poss. removal of pins. Consult written for f/u. | Dale Rodgers, MD |
| 5/5/06 | 0355 | Awake c̄ verbal c/o mod pain to (R) index finger Ø S & S of infection at site, mild edema. - bandage intact admin Loratab i p.o. | Kathryn Kratger RN |
| 5/5/06 NSↄ DOC | 1100 | D met in room No c/o. Lt index finger clean+dry Bandaid to area. No S+S of infection. Noted circulation good. alt & fine extrmts. Plan continue Rx chart prn | D Dennin |
| 5/6/06 NSↄ DOC | 0900 | Condition finger unchanged. Sleepy in bed. No c/o. | D Dennin |

7113 Rev    4

**Correctional Medical Services**
**Inter Disciplinary Progress Notes**

Patient Name: Porterfield, Anthony          ID#: 416473          Institution: D-C-C.

| Date | Time | Notes | Signature |
|------|------|-------|-----------|
| 5/7/06 | 14:00 | Im standing in cell, next to door. A + O x3, verbal, good eye contact. C/O pain to (L) index finger. Pain med given as ordered. Bandaid changed to (L) index finger. Some swelling noted to (L) index finger & discharge. — N. Obale, LPN | |
| 5/7/06 | 21:00 | I/M up in cell. Voices no complaints to this nurse. BP 127/89, 96.3, 108, 20, 97%. Lortab + tab given P.O. for pain. Continue to monitor. — Nancy James RN | |
| 5/8/06 | Ns. Doc 07:00 | Quiet in room. Circulation good to Lt Index bone graft finger. Dressing dry intact area kept clean. alt. Bone integrity. Plan Continue Rx chart prn — Dennis | |
| 5/8/06 | 1 pm | **MD Note**
(S) Pt. seen today. C/O yellow d/c from his finger tip where rods protruding out.
(O) (L) index finger - min clear lig expelled from finger tip. graft site pink tissue, mild erythema, min swelling brisk cap. refill ⊖ cyanosis pulse intact
A/P: (L) index finger s/p surg c̄ hardware placed will start Cipro prophylax x7d and cont. to obs. — Dale Rodgers, MD | |

7113 Rev 03/04

**Correctional Medical Services**
**Inter Disciplinary Progress Notes**

| Patient Name: | | ID#: | | Institution: | |
|---|---|---|---|---|---|

| Date | Time | Notes | Signature |
|---|---|---|---|
| 5/9/06 | 0335 | resting quietly this shift denies discomfort NP 88/53 95³ 106 20 SpO₂ 97% on RA - scant yellow drainage from (L) index (fingertip) - will rec B/P will in ☰ hr _____ Kathryn Kratzer RN | |
| | 0420 | B/P in ® arm sitting up 92/68 - will cont to mont ⊘ S/S of adverse reaction to ABT _____ Kathryn Kratzer RN | |
| 5/5/06 | | D/C 0900 2m amt, drainage on Bandaid finger Using Lortab prn for pain, alt ibuprofen right plan Continue RN Chart prn _____ Damon M | |
| | | V.S. 96/56 - 96' - 102 - 98 | |
| 5/9/06 | 2100 | alert c̄ verbal c/o pain to (L) index (finger) c̄ feeling of hot c̄ ↑ edema scant yellow drainage NP 132/86 95⁵ 79 18 SpO₂ 98% RA - ⊘ S/S of adverse reaction to ABT - admin Loratab ī p.o _____ Kathryn Kratzer RN. | |
| 5/10/06 | 1530 | c/o finger more swollen + draining. Seen by Dr Dust + betadine soaks ordered. CStetson | |
| 5/11/06 | 0425 | resting quietly most of shift - alert verbal - c/o pain to (L) index (finger) Loratabs ī admin p.o. NP 94/59 97° 97 18 SpO₂ 98% RA ⊘ S/S of adverse reaction to ABT _____ Kathryn Kratzer RN. | |

Correctional Medical Services
Inter Disciplinary Progress Notes

Patient Name: Porterfield, Anthony   ID#: 416473   Institution: DCC 06362

| Date | Time | Notes | Signature |
|------|------|-------|-----------|
| 5/11/06 | 0900 | Mozi pos Quiet in bed. Lt index finger swollen c drainage Reaving Betadine soaks ordered by Dr. Durst, pt show Bone integrity Plan continue Rx. Chart | Drumm |
| 5/11/06 | 0920 | red broken down area on top of graft site Noted ? losing graft to finger. Dr. DuShuttle's Office called & notified Dr. DuShuttle V.S today. 121/73-95°-96-18 93% RA. Dr. DuShuttle wants to see I/m ASAP. Jessica consult manager aware to arrange. | Drumm |
| 5/11/06 | | NP note. | |

(S) Reports index finger "hurting" & bleeding a little bit since this morning

(O) Vs 121/73, 95.9, 96, 18 SpO₂ 93. A&Ox3, Ø acute distress, skin w/o, Lt index finger drsg intact c small light pink drainage. Graft site red, surrounding tissue mildly erythematous, warm & tender. finger s cyanosis, cap refill intact.

(A) Lt index finger hardware placement

(P) Per DuShuttle's order I/m to be sent to his office for evaluation of finger. will f/u upon return. ———— Schultz np

7113 Rev 03/04

**Correctional Medical Services**
**Inter Disciplinary Progress Notes**

Patient Name: _Porterfield, Anthony_  ID#: _216493_  Institution: _DCC_

| Date | Time | Notes | Signature |
|------|------|-------|-----------|
| 5/11/06 | 1200 | Out to see Dr DuShuttle in office. Woman | |
| | 1435 | Returned c̄ note from Dr DuShuttle ___ | |
| 5/11/06 | | S: I/M requesting peroxide soak. | |
| | 1930 | O: BP 126/54, 97.2, 88, 20, 96% RA A+O x 3. ® index finger @ 1 swelling noted, clear drainage noted. Peroxide soak x 15 min administered. ® index finger then rinsed c̄ Normal saline & redressed c̄ 2 × 2's & 2" kling gauze. I/M tolerated soaks s̄ discomfort. A/P: Continue peroxide soaks BID & meds as ordered. ___ Nancy ___ RN | |
| 5/12/06 | 0850 | VS 116/73 - 96' - 82 - 16 - O2 sat 97% RA. ® index finger c̄ Dsg D/I. Voiced c/o pain + vicodin given. Will recieve dsg ∆ & H₂O₂ soak today this shift. ___ RN | |
| 5/12/06 | | NP note: I/M seen today on routine infirmary rounds. c/o Lt finger pain. Currently receiving vicodin c̄ relief. Visited Dr DuShuttle yesterday, requested for f/u in 1 week. Consult written. Cont c̄ H₂O₂ soaks daily. & monitor finger for s/s of infection ___ NP | |

7113 Rev 0

**Correctional Medical Services**
**Inter Disciplinary Progress Notes**

Patient Name: Porterfield, Anthony    ID#: 416473    Institution: D.C.C.

| Date | Time | Notes | Signature |
|------|------|-------|-----------|
| 5/12/06 | 2000 | I/M given peroxide soak for finger. (L) index finger c̄ decreased redness noted. Minimal clear drainage noted. BP 100/86, 96.9, 82, 20, 97% r.a. (L) index finger rinsed c̄ N.S., p̄ soak & rewrapped. Continue H₂O₂ soak. & monitoring. | J. Jacowski RN |
| 5/13/06 | 0600 | I/M given peroxide soak for finger. (L) index finger c̄ decreased redness. (L) index finger rinsed c̄ N.S., p̄ soak & rewrapped c̄ c̄ NOR & gauze wrap. Continue H₂O₂ soak & monitoring. | B. Ground |
| 5/13/06 Nsg. Doc. | 0900 | V.S. 124/80 - 96⁴ - 92-18  97% Sat. alt function skin integrity Lt Index finger Sm amt bloody drainage Noted on dressing No red streaks or ↑ heat Noted Lt arm. Plan continue Rx Chart prn | C. Perrino |
| 5/13/06 | 18:00 | I/M given peroxide for finger soak. (L) index. Decreased redness noted. Some swelling. Scant amount of clear drainage noted. ī Lortab given for c/o pain to (L) index. Finger rinsed c̄ N.S. & wrapped c̄ non-adherent pad and gauze. Will continue c̄ plan of care. | N. Obale, LPN |
| 5/14/06 Nsg. Doc. | 0900 | Up in room. Dressing Index Finger dry intact. No c/o at this time. Using Lortab prn for pain. alt. Lt. Index finger bone integrity. Plan continue Rx Chart prn V.S 124/75  97⁵ - 95 - 18  96% RA | C. Perrino RN |

**Correctional Medical Services**
**Inter Disciplinary Progress Notes**

| Patient Name: | Porterfield, Anthony | ID#: 46473 | Institution: D-C-C. |
| --- | --- | --- | --- |

| Date | Time | Notes | Signature |
| --- | --- | --- | --- |
| 5/14/06 | 18:00 | I/m quiet in cell. A+O x3, resp. even and unlabored. R index finger tx done. ↓ swelling to R index finger. ⊖ active bleeding. Medicated c̄ 1 Lortab for c/o pain. No further complains voiced out. Will continue c̄ plan of care. — N. Okaele, LPN | |
| 5/15/06 N/1 | | POC 0900 Quiet in room. Index finger dressing dry + intact. WDL @ this time. Lortabs prn for pain finger. ʘDamne √ Status 92/56 - 96-88-20 95% RA ʘDamne | |
| 5/15/06 DCC 1530 | | Returned from Dr. Dishottle. Pins removed due to infection. Recomended Keflex 1gm IV Q8°. Per Dr. Burns IV antibiotics Ancef Q8° x 10 days. Nurse McKinze started 20 gauge saline lock in RFA + first dose Ancef being started @ 1600 — M.Duple RN BSN | |
| 5/15/06 N/1 | | POC 1530 IV started RFA #20 G. angio by S. McKenzie + S. Stucks. Ancef 1 gm IV given. Chris Damne | |
| 5/15/06 | 1730 | I/m IV antibiotic completed. Saline lock flushed + patent. R sa fore finger wrapped c̄ gauze + dressing. I/m states M.D. instructed him to leave bandage in place until seen by him again by next week. Continue to monitor. Okney Damne RN | |
| 5/6/06 | 22³⁰ | BP 132/86, 96.7, 78, 20, 97% @ 22³⁰ D. Damne RN | |

7113 Re  /04

**Correctional Medical Services**
**Inter Disciplinary Progress Notes**

Patient Name: _Porterfield, Anthony_   ID#: _416 473_   Institution: _Dc 0636z_

| Date | Time | Notes | Signature |
|------|------|-------|-----------|
| 5/17/06 N/y, DOC | 0900 | V.S. 102/74 97² -88-20 97%RA. Lt index finger dressing dry + intact. Received brief IfsmF.V s difficulty I.V sites sign infection. alt skin intrepity. Plan continue Rx. Chart prn | C Damon R |
| 17/06 | 20:00 | V.S. 129/90, 96.1, 115, 20, O₂ Sat 98%. Ancef 1gm given I.V. @ 1630. s difficulty. No s/s of distress noted to I.V site. Splint and dressing noted dry and intact to (L) index finger. Medicated c - Lortab for c/o pain. Will continue c plan of care. — N. Obale, LPN. | |
| 5/18/06 | 0400 | Continues on IV abt's for wound manage of Rt index finger — no adverse reactions noted | Stephens 2 |
| 5/18/06 N/y, DOC | 0900 | V.S. 120/70 96⁵-81-18 97%RA I.V ABT. infused s difficulty No inflamation at site. Splint + dressing intact Rt index finger. Instructed to cover IV site + finger for shower. Circulation good to index finger alt. bone, skin intrepity plan continue Rx. Chart prn | C Damon |
| 5/18/06 | 2230 | I/M resting quietly this shift alert c verbal cooperative. N.P. 128/82 96² 88 20 SpO₂ 97% on RA — ⊘ s/s of Adverse reactions to ABT splint c drsng intact to (L) index finger) - Lortab ₸ p.o. admin for discomfort @ 1800 c ⊘ effect | H Kratzer Rn |

7113 Re  /04

**Correctional Medical Services**
**Inter Disciplinary Progress Notes**

Patient Name: Porterfield, Anthony    ID#: 416473    Institution: DCC

| Date | Time | Notes | Signature |
|------|------|-------|-----------|
| | | MD Note | |
| 5/16/06 | | Ⓢ pt seen today. | |
| | | Ⓞ Afebrile VSS P.O. 98% | |
| | | Ⓛ index finger c̄ splint on + dsg s̄ d/c on it | |
| | A/P | s/p Ⓛ index finger fusion c̄ pinning removed 2° to infection | |
| | | cont IV Abx | |
| | | consult written for f/u in 1wk | |
| | | Renewed Lovatab. | |
| | | Dale Rodgers, MD | |
| 5/16/06 | DCC 1050 | VS: 100/60-98°-90-20- O2sat 98% RA. Continues on IV Ab Ancef Q8°. Dsg remains D/I to Ⓛ index finger. Will continue to observe — Mkuydile Pu? BRN | |
| 5/16/06 | 21:00 | I/m resting quietly in bed. A+O x3, resp even and unlabored. Splint + dressing noted dry and intact to Ⓛ index finger. Medicated c̄ ī Lortab at this time for c/o pain. Will continue to monitor — N. Obale, LPN. | |
| 5/17/06 | 0110 | I/M resting in bed awakens easily alert c̄ verbal Ø S/S of adverse reaction to ABT - IV site Ø erythema, edema or tenderness noted - flush c̄ 3cc NS c̄ ↑ Ancef 1gm in 100ml NS infusing well @ 100cc/hr — Kathryn Kratzer RN | |
| | 0215 | p̄ ABT admin - flush IV c̄ 3cc NS c̄ ease - Ø c/o discomfort at this time — Kathryn Kratzer RN | |

7113   v 03/04

**Correctional Medical Services**
**Inter Disciplinary Progress Notes**

Patient Name: Monteprlts, Anthry   ID#: 416473   Institution: Dcc 06362

| Date | Time | Notes | Signature |
|------|------|-------|-----------|
| 5/19/06 | 0030 | I/M alert & verbal lying in bed denies discomfort at this time - afebrile Ø S/S adverse reaction to ABT - IV ® forearm patent to 5ml NS flush Ø erythema, edema, or tenderness noted | Kathryn Straher RN |
| 5/19/06 | 18:00 | I/M resting quietly in bed. A+O x 3, resp. even and unlabored. I.V. Ancef 1gm given @ 16:30 s̄ problems. No s/s of infiltration noted to I.V. site. Splint and dressing noted dry and intact to (L) index finger. Medicated c̄ PRN pain med for c/o pain. Will continue to monitor. — N. Obale, LPN. | |
| 5/20/06 | 2000 | I/M alert and oriented x 3, respiration even and unlabored. VS Temp 94.9. Ancef antibiotic continues. No adverse reaction noted. Ø distress verbalize. IV site non infected but blood noted during when he showered. ∅ IV site reinforced c̄ Tape. Pain meds given as per order. Will continue to monitor. — Rokonse Yn. | |
| 5/21/06 | 0100 | I/M AE Ox 3 denies discomfort cooperative - IV site ® UE intact patent to 3ml (flush) Ø S/S of infiltrate erythema or tenderness - small amt dried blood under tegaderm, ↑ Ancef 1Cm c̄ 100ml NS K Kratzer | |

7113 Rev 03/04

**Correctional Medical Services**
**Inter Disciplinary Progress Notes**

Patient Name: Porterfield, Anthony    ID#: 416 473    Institution: D2c8636 z

| Date | Time | Notes | Signature |
|------|------|-------|-----------|
| 5-21-06 0830 | NSG | R. Sided IV would not flush, catheter was bent, disc IV catheter. no erythema, no edema, no drainage & no pallor @ IV site. I/M chose L. sided #20 angio in forearm vs. R. hand. Reinforced that a catheter / needle stick in hands are "sometimes more painful compared to the forearm." adm. ancef per dr. order, Ø S&S g infiltration/phlebitis. I/M did not request pain medication (L) splint & dressing are dry & intact, will continue monitoring. R. Mapes, NO | |
| 0843 | NSG | (late note) 0830 — VS 105/73, 97.6, 73 even | |
| 5/21/06 1800 | | (L) FA saline lock patent to 3cc NS flush. Ancef 1gm infusing in (L) FA 3 erythema or infiltrate. BP 118/80, 95.5, 100, 20, 96% RA. Splint & dressing D+I to (L) index finger. Continue to monitor. — Nancy ___ RN | |
| 5/22/06 Nurse joe | | 0900 Arrived in room to see Dr. Duchuttle today. Lt index finger c splint in place, No C/O at this time alt bove extremity flan continue Rx Cheston Dunn | |
| 5/23/06 Nurse joe | | 0900 VS. 118/84. 98°-99-20 98% RA Circulation good. Lt index finger, No C/O alt bove extremity. Went to Dr Duchuttle yesterday says ok pr M.D. to check. CJ Dunn Rn | |

7113 Rev 03/

**Correctional Medical Services**
**Inter Disciplinary Progress Notes**

Patient Name: Porterfield, Anthony   ID#: 416473   Institution: 0636z

| Date | Time | Notes | Signature |
|------|------|-------|-----------|
| 5/23/06 3pm | | **MD Note**<br>Reviewed ortho consult notes — continue IV Abx, keep splint on and RTC in 1 wk. Consult written for f/u. | Dale Rodgers, MD |
| 5/23/06 | 2130 | S: I/M complaining of IV hurting.<br>O: Minimal erythema noted at IV site (L) FA. (L) FA IV D/C'd c̄ catheter intact. New IV started in (L) AC c̄ 24 ga. angiocath x 1 attempt. Saline lock patent to flush. ~~1000mg~~ error. Continue IV Abx & monitor. N. ____ da | |
| 5/24/06 | 0045 | — I/M lying down — awakens easily — cooperative c̄ care — afebrile IV c̄ (R) arm intact ø s/s infiltration observed — patent to 3ml NS flush ↑ Ancef 16m c̄ 100ml NS — Kathryn ____ | |
| 5/25/06 | 0655 | VS 98.0/60-97²-86-20-98% O2sat RA. Dsg to (R) hand remains D.I.T. Continues c̄ IV ancef to (R) antecubita IV. Will continue to observe — Mary ____ RN | |
| 5/24/06 | 20:00 | Quelit in cell·A+O x3, resp. even and unlabored. No s/s of distress noted· Splint and dressing noted dry and intact to (L) index finger. No s/s of infection noted to I.V. site· No complains voiced out Will continue c̄ plan of care.— N. Obale, LPN· | |

7113 Rev 03/04

**Correctional Medical Services**
**Inter Disciplinary Progress Notes**

Patient
Name: _____    ID#: _____    Institution: _____

| Date | Time | Notes | Signature |
|------|------|-------|-----------|
| 5/25/06 | 0115 | I/M awake č verbal ⊘ s/s of adverse reaction to ABT - rfsd N.S √ - IV site @ ® antecub patent to 3ml NS flush ⊘ s/s infiltration or phlebitis noted - ① finger brace č wrap intact — Kathryn Kratzer RN | |
| 5/25/06 11am | | MD Note spoke č Dr Dushuttle office on clarification of continuance of IV Antibiotics. Will continue IV Ancef for another wk until seen in office is WK. | |
| 5/25/06 | PCC 1300 | VS 118/74 - 20 - 78 - 97² O2sat 98% RA. Dsg remains D/I to ® hand. Voiced ∅ %. IV Ancef ordered for 7 more days. Will cont to observe M Suydlauter RN | |
| 5/25/06 | 2000 | - I/M AC O₂ 3 new IV site to ® forearm č 22 gauge angio - patent to 5ml NS flush saline lock clamped until Ancef ready to be hung - splint č bandage intact ⊘ dry to ② index finger Kathryn Kratzer RN | |
| 5/26/06 | MD 0900 | @met circulation good to rt index finger. Splint dressing dry + intact IV site patent. alt. bone integrity / Plan continue Rx chart pm C Dunmum | |

7113 Rev 02/04

**Correctional Medical Services**
**Inter Disciplinary Progress Notes**

Patient Name: Potterfield          ID# 416473          Institution:

| Date | Time | Notes | Signature |
|------|------|-------|-----------|
| 5/26 | 11pm | I/m in cell. Received IV med tolerated well. IV site intact. Pains from ABT ancef. Medicated X1 c̄ pain. Med this shift c̄ some relief. _____ RN | |
| 5/27/06 | 0605 | I/m infusing slowly. R arm sensts to touch. Yu c/o pain @ site. Salein lock D/c'd. Refused V.S. Splint L finger intact. ___ D/c ___ RN | |
| 5/27/06 N2 | DOC 0900 | V.S. 106/88 - 105 - 20  94% Sat. IV out will need restart before 1400 hrs. Circulation to splinted Lt hand good. tortabs prn for pain. Index finger. alt bone extreg. Plan continue R̄x chart prn. Chris Damon Rn | |
| 5/27/06 | 1400 | F/V restarted Lt upper forearm c̄ 20G angio c̄ difficulty. IV given (Damon RN | |
| 5/28/06 N2 | DOC 0900 | V.S. 98/71  96² - 84 - 16  96% sat. Denies complaint. Lt hand circulation good. Splint on Lt index finger. F/V site patent left upper arm. using tortabs for pain c̄ relief. alt bone inturgity. Plan continue R̄x chart prn (Damon | |
| 28/06 | 22:00 | Quiet in cell. A+O x 3, resp. even and unlabored. No s/s of distress noted. No complains voiced out. I.V. site patent to flush. Ancef 1gm running s̄ problems. Splint to L hand intact. Will continue c̄ plan of care. ——— N. Obale, LPN ——— | |

**Correctional Medical Services**
**Inter Disciplinary Progress Notes**

Patient Name: _Porterfield Anthony_   ID#: 416 473   Institution: 26362

| Date | Time | Notes | Signature |
|------|------|-------|-----------|
| 5/30/06 | N/g DOC 0900 | Sleeping c̄ I.V. upper left arm hurting - will change I.V. site today. Circulation good to Lt. hand. art bone entrgnty. Plan Continues Chart PRN | CDammer RN |
| 5/30/06 | 22:30 | I/m sitting up in bed, watching T.V. A+O x3, resp. even and unlabored. I.V. site changed today to (L) forearm. Ancef 1gm running s̄ problems. Patent to flush. No s/s of infiltration noted. Splint dry and intact to (L) hand. Medicated c̄ PRN pain med for c/o pain to (L) hand. Will continue to monitor. — N. Okole LPN ~ | |
| 5/31/06 | N/g DOC 0900 | Splent dry + intact Lt hand & IV remains patent s̄ signs of Infiltration. No c/o at this time. alt. bone entrgnty. Plan Continues Rx Chart prn — | CDammer RN |
| 5/31/06 | 1230 | Banging on Door. Wants off pow. State w/s gotten 10 v 3 Days. Writ Form refused prn Voiced c̄ c/o Dsg remains intact to (R) hand. Continues to observe — | M Guy LPN 1884 ~ |
| 6/2/06 | DCC 1510 | | |
| 6/4/06 | 1200 | I/M sitting on bed c̄ (R) hand down. States hand is throbbing off + on today. Instructed I/M to elevate arm above chest area; not to dangle hand + to elevate (R) arm / hand when resting. I/M demonstrated verbal understanding. Dsg to hand intact | N. Armer | |

7113 Rev 08/04

Correctional Medical Services
Inter Disciplinary Progress Notes

Patient Name: _Porterfield, Anthony_  ID#: 416473  Institution: DCC

| Date | Time | Notes | Signature |
|------|------|-------|-----------|
| 6/5/06 | 1345 | DCC osov at Door on rounds more & more anxious. Has been without Effexor for at least 1 wk now. Pharmacy called Won-form has not be received & approved by Dr Jacobson as yet. Won-form faxed to Dr. Jacobson office & called to see if IM can have something else until Non-form Effexor arrives. alt. Coping. Lt Index finger dressing dry & intact. Plan Continue Rx chart prn ———— C Brown | |
| 6/6/06 | Nsg 0900 | Quiet in room. NO C/O. Index finger Splint in place Circulation good. Using Tortol prn for pain. alt comfort bone extrmty plan Continue Rx chart prn —— C Damron | |
| 6/6/06 | 4pm | **MD Note** pt seen today. Back from visit to ortho. Consultants note reviewed and so consult written for f/u. ———— Addendum: spoke c̄ PA of Dr. Dushuttle's about pt. case. He d/w Dr Dushuttle about the case & he would like for ID -Dr. Niaz to see pt & suggest appropriate IV Abx for osteomyelitis presumed b/c on xray bone deterioration noted. ———— | |

Co      al Medical Services
Inter Disciplinary Progress Notes

Patient
Name: Porterfield, Anthony    ID#: 416473    Institution: DCC

| Date | Time | Notes | Signature |
|------|------|-------|-----------|
| 6/6/06 | 0500 | At Door on rounds more + more anxious. Has been without Effexor for at least 1 wk now. Pharmacy called non-form has not be received + approved by Dr Jacobson as yet. Non-form faxed to Dr. Jacobson office + called to see if pt can have something else until non-form Effexor arrives. alt. Coping. Lt index finger dressing dry + intact. Plan continue to chart prn | C Brown |
| 6/6/06 | 0900 | Quiet in room. No c/o. Index finger Splint in place Circulation good. Using portab prn for pain. alt comfort bone extremity. Plan Continue Rx chart prn | C Bammon RN |
| 2/6/06 4 pm | | **MD Note** pt seen today. Back from visit to ortho. Consultants note reviewed and consult written for flu. Addendum: spoke c̄ PA of Dr. Dushuttle's about pt. case. He d/w Dr Dushuttle about the case + he would like for ID - Dr. Niaz to see pt & suggest appropriate IV Abx for osteomyelitis presumed b/c on Xray bone deterioration noted. | |

## Provider Consultation Report
**(Complete and return in SEALED envelope with Correctional Officer)**

Date of Service: 6·6·06

Reference #: _____

Inmate: Butterfield, Anthony

Institution: DCC

Provider: DuShuttle

Inmate ID: 416473

Institution ID: 10365

Provider Type: Ortho

DOB: ~~██████~~

Phone: _____

Location: _____

### ***See Attached Consultation Request for Health Services Authorized***

*For security reasons, inmates must NOT be informed of recommended treatment or possible hospitalization. Due to security consideration, all recommended tests and treatments are to be scheduled by CMS.*

**Review of Case:** (Chief complaint, exam findings etc.)

The pt. returns to our office today for a f/u on a Deludes finger fusion ē pinning, removed 2° to infection.

Pt states that he feels mild discomfort at the DIP Joint.

He not taking anymore IV antibiotics

Deludes Finger. – Pt has decreased swelling + erythema. Has minimal flexion at PIP Joint ~~July~~ ~~Pit~~ + DIP Joint

Has a lot of Dry Skin around finger

X-RAYS – Bone Deterioration of Distal Phalanges.

**Diagnosis and Prescription Suggestions** (To be reviewed by CMS Medical Director)

S/P Deludes finger fusion ē pinning, removed 2° to infection

Keflex 500 mg #21 T po BID

Can equivalent medication substitution be used? ☑Yes ☐No        Follow-up needed? ☑Yes ☐No

If follow-up needed, explain: Pt should have appt. made - specifically ē Dr. DuShuttle to discuss prognosis of finger

Provider Name (print): JOHN MECCICO PA   Provider Signature: John Meccico PA   Date: 6/6/06

### To be completed by CMS provider

Recommendation after review of consultant's report:        ☐No further action        ☐Implement the following

Implement:

CMS Provider Name (print): _____        CMS Provider Signature: _____        Date: _____

401B 9/9/04

Correctional Medical Services
File: 401B 9.9.04 MRS shared drive DMRS folder

**NAME:** Anthony Porterfield

**DATE:** 6/6/06

**ADDENDUM:** I spoke with Dr. DuShuttle this afternoon and discussed the x-rays of the patient with him. Dr. DuShuttle ~~once~~ *wants* the patient back on IV antibiotics and also to see an infectious disease Dr. ASAP. I spoke with Dr. Rogers at the correctional facility this afternoon and she says that Dr. Niaz who is an infectious disease doctor will be at facility tomorrow and she will have him see the patient tomorrow. She will also have IV antibiotics started when consulting with him. We will be consult by Dr. Rogers and/or Dr. Niaz.
It should be noted that the patient admits to not being in the most sterile environment. We had to give him a new Velcro finger splint today because of how dirty his previous one was. The patient has also admitted in the past to not being sure as to whether or not he had hit his finger which may have irritated the pin site.

**JM**

## CONSULTATION REQUEST

☐Off-site    ☐On-Site Clinic   ☐Telemedicine          Reference #:_____

☐Urgent        ☐Routine    ☐Retro Request          Date of Request: __6.7.06__

Inmate: Porterfield, Anthony   Inmate ID#: 416473          DOB:_____

Site: DCC Infirmary          Cost Center:_____          DOI:_____ EDR:_____

3rd Party Insurance: (VA, Workmen Comp, Federal, Interstate Compact, etc.):_____

For security reasons, inmates must NOT be informed of date, time or location of proposed treatment or possible hospitalization. Authorization and payment is provided ONLY for requested procedures or treatments of life-threatening conditions. Prior review/discussion with Medical Director is required for additional treatment, procedures and hospitalizations.

Procedure/Test/Specialty Service Requested: __Dr. Dushuttle - ortho 678-8447__

Provider:_____    Initial Visit or F/U? _____    F/U#: ③

**Presumed Diagnosis:** S/P Ⓛ index finger fusion c̄ pinning removed 2° to

**Describe Signs & Symptoms:** Infection R/O osteomyelitis          Date of Onset:

pt. still c/o mild discomfort @ DIP joint

**Exam Data/Objective Findings:** Ⓛ index finger - minimal flexion @ PIP jt + DIP jt.
↓ swelling, min erythema, c̄ splint on.

**Lab & X-ray Data:** ✱ Xray in office - Bone detensipation of Distal phalanges. poss osteomyelitis

**Current Medications:** Keflex - Po antibiotic started p̄ IV Abx b/c finger not
effexor   thorazine          healed completely

**Failed Outpatient Therapies:** Refer pt. to Dr. Niaz-ID per Dr. Dushuttle Request
RE: osteomyelitis of Ⓛ index finger & comment on IV Antibiotic therapy.

Enrolled in Chronic Care Clinic (s)? ☑ Yes ☐ No   Which Clinic(s)?

**Other Diagnosis:** Depression, PTSD

**Comments:** Dr. Dushuttle would like to see I/M in 2 wks to f/u &
discuss options of surgery/amputation if @ next visit not healed

Site Medical Provider: __Dr. Rodgers__   Signature: _____   Date: 6/7/06

Nurse: _____ Date: _____   Site Medical Director: _____ Date: _____

| Criteria Source: ☐ M&R  ☐ InterQual | Notes: |
|---|---|
| ☐ Other(specify): | |
| Criteria Met: ☐  Criteria Not Met: ☐  More Info Needed ☐ | |
| UM Review #: | |
| Initials:        Date: | |

*Note: Notify physician or midlevel practitioner immediately if unable to obtain appointment within 4 weeks. If service is not completed within 4 weeks, have patient re-evaluated by physician or midlevel practitioner to determine if service is still necessary and appropriate.*

**CORRECTIONAL MEDICAL SERVICES, Inc.**       **PHYSICIANS' ORDERS**

Name _Porterfield Anthony_    D.O.B. ~~_____~~

Location _DCC·06362_   ID# _416 473_   Allergies _PCN_

| Check box as order is noted: | (Date & Time) |
|---|---|
| Noted by: _5/23/04_ | F/O in 1wk c̄ Dr. Dushutle - consult _to Jessica_ done |
| Date:  Time: | 5/24/06 2149 Kathryn Kratzer RN |
| | M.D. Signature  Dale Rodgers, MD   Date/Time _5/23/06_ |
| Check box as order is noted: | (Date & Time) |
| Noted by: _BCO_  Date: 5/25/06  Time: BCO | Continue IV Ancef x 7 days more |
| | 5/26/06 0035 p4d Kathryn Kratzer RN |
| | M.D. Signature   Date/Time _5/25/06_ |
| Check box as order is noted: | (Date & Time) |
| Noted by: _BCO_  Date: 5/29/06  Time: BCO | ✓  Lortab 1 tab PO BID x 7d |
| | 2° Check 8/30/06 0245 n̄ |
| | M.D. Signature  Dale Rodgers, MD   Date/Time _5/29/06_ |
| Check box as order is noted: | (Date & Time) |
| Noted by: _Kathryn Kratzer RN_  Date: 6/6/06  Time: 2025 | Dr Niaz to see pt. Wed 6/7/06 - plse start plan Antibiotic therapy of choice |
| | consult for ortho — done |
| | Motrin 800mg PO BID PRN x 10d. |
| | 6/7/06 2445 Kathryn Kratzer RN |
| | M.D. Signature   Date/Time _6/6/06_ |

93 Rev 03/04

### Provider Consultation Report
**(Complete and return in SEALED envelope with Correctional Officer)**

Reference #:_____

Inmate: Ponton Pineel, Anthony

Institution: DCC

Provider: Dr. Barnett

Inmate ID: 416473

Institution ID: 6362

Provider Type: Gen. Surgeon

Date of Service: 79·22·06

DOB: ~~████~~

Phone:_____

Location:_____

**\*\*\*See Attached Consultation Request for Health Services Authorized\*\*\***

*For security reasons, inmates must NOT be informed of recommended treatment or possible hospitalization. Due to security consideration, all recommended tests and treatments are to be scheduled by CMS.*

Review of Case: (Chief complaint, exam findings etc.)

Infected 2nd (L) finger

Diagnosis and Prescription Suggestions (To be reviewed by CMS Medical Director)

Can equivalent medication substitution be used? ☐Yes  ☐No     Follow-up needed? ☐Yes  ☐No

If follow-up needed, explain: D. Dr Shuttle

Provider Name (print):                Provider Signature:                Date:

**To be completed by CMS provider**

Recommendation after review of consultant's report: ☐No further action    ☐Implement the following

Implement: See Dr Shuttle for possible I&D / debridement

CMS Provider Name (print): T. Barnett    CMS Provider Signature:            Date: 6/22/06

401B 9/9/04

Correctional Medical Services
File: 401B 9.9.04 MRS shared drive DMRS folder



## Mid-Delaware Imaging

PATIENT:       ANTHONY PORTERFIELD     416473
DOB:
FILE #:        61199
PHYSICIAN:     DR. NIAZ
EXAM:          MRI OF THE LEFT INDEX FINGER
DATE:          07/06/2006

CLINICAL INDICATION:
Rule out osteomyelitis. Wound is not healing after surgery.

TECHNIQUE:
Three plain MR imaging obtained of the left index finger. Imaging was performed on this patient in the axial plane with T1-weighting and with a T2-weighted sequence. This was followed by coronal proton-density and T2-weighted sequences, sagittal T1-weighted sequences and coronal inversion recovery sequences.

FINDINGS:
There are posttraumatic or postsurgical changes involving the proximal distal phalanges of the index finger. The head of the middle phalanx and base of the distal phalanx are eroded or fractured. There is longitudinal pin track in the middle phalanx. Abnormal marrow signal involving all but the most proximal 3 mm to 5 mm of middle phalanx. The remainder of the middle phalanx and entire distal phalanx had its abnormal signal with marrow edema. Findings are consistent with osteomyelitis. The distal half of the index finger has concentric marked soft tissue swelling and edema. The distal phalanx is displaced greatly by 3 mm or so with respect to long axis of the middle phalanx. On axial images, there is a cortical defect of the dorsal ulnar aspect of the middle phalanx and the radial aspect of the distal phalanx. I cannot determine how much of this is erosive change versus postoperative resection. The nail bed is elevated from the distal phalanx presumably because of the soft tissue swelling and inflammatory process. There is no significant effusion of the PIP joint. Marrow signal in the proximal phalanx index finger is normal. No significant abnormalities identified in the long ring fingers.

IMPRESSION:
FINDINGS CONSISTENT WITH OSTEOMYELITIS OF THE DISTAL AND MIDDLE PHALANGES OF THE INDEX FINGER GIVEN THE SUSPICION OF INFECTION.

7/14/06

710 South Queen Street
Dover, Delaware 19904
302-734-9888

**PORTERFIELD, ANTHONY   61199**

THIS REPORT WAS ELECTRONICALLY SIGNED

**Douglas K Smith, MD**
DKS/Q5

Correctional Medical Services
1181 Paddock Road
Smyrna, DE 19977
PH:   302-653-9261
FAX: 302-659-5051

*Faxed 7/14/06*

# Fax

To: Dr. DuShutte's office   Attn: John, PA

From: Dr. Rodgers @ DCC

Fax: 302-678-8193          Pages: ③ to follow

Phone: 678-8447          Date: 7/14/06

Re: Anthony Porterfield - MRI

☐ Urgent  ☑ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

**Correctional Medical Services**
**Inter Disciplinary Progress Notes**

Patient Name: Porterfield, Anthony     ID#: 416473     Institution: DCC

| Date | Time | Notes | Signature |
|------|------|-------|-----------|
| 7/14/06 | DCC 0840 | I/m claims "I'm good" Dsg to (L) index finger D/I. PICC line patent + intact. A/O x3. Ø acute distress noted Melinda Rew RN | |
| 7/17/06 | 0345 | I/m in cell standing against the wall. Ø s/o of discomfort voiced. PICC line patent & dsg to (L)index finger intact. Ø acute distress noted. Will continue to monitor —— A. Platmoore | |
| 7/17/06 | DCC 1040 | VS: 122/80-96⁵-105-18. spO2 98%. Voiced Ø c/o. A/O x3. Ø acute distress noted. PICC line patent, intact. Dsg to picc D/I. w/ Dsg to (L) index finger D/I. Will continue to do sinc —— Melinda RN | |
| 7/18/06 | 12pm | MD Note ⓞ pt seen today ⓞ Afebrile VSS ⓑ 90 P.O. RA. (L) index finger still swollen ⓔ erythema ⓞ d/c | |
| | R/P | ○/P (L) index finger fusion c pinning removed 2° to infection now on IV Ancef /osteomyelitis. cont. IV Abx consult written for Dr. Dushuttle f/u p Abx. | |
| 7/18/06 | 1500 | A/O x3. Resp even & non-labored. (L) PICC line intact c dry drsg. Splint present to (L) index finger c stretch drsg noted. Ø c/o pain, Ø s/s of acute distress. —— J. McKenzie RN | |
| 7/18/06 | 1000 | 97! -105-20-108/66 -98%. —— J. McKenzie RN | |

7113 Rev 03/04

## CORRECTIONAL MEDICAL SERVICES

## MEDICAL PROGRESS NOTES

### INFIRMARY DISCHARGE SUMMARY

INMATE'S NAME: Porterfield, Anthony   INMATES NO. 416473

DATE: 8/29/06.                    TIME 12 pm.

| | |
|---|---|
| ADMITTED: 4/19/06 | |
| DISCHARGED: 8/29/06. | CONDITION ON DISCHARGE: |
| | stable |
| | |
| | |
| ADMITTING DIAGNOSIS: | |
| S/P (L) index finger fusion c̄ pinning + bone graft. | LAB/TESTS PERFORMED: Chem24 – creat = 1.4, otherwise Trig = 158. wnl G-OTP = 82 |
| DISCHARGE DIAGNOSIS: | |
| ① Above | CBC – wnl |
| ② (L) index finger osteomyelitis | MEDICATIONS ON DISCHARGE: Loratab MVT Effexor thorazine |
| BRIEF HISTORY: pt adm to the infirmary c̄ above dx however was adm to pt had to wear splint c̄ metal. In the course pt. developed osteomyelitis of the (L) index finger + required IV Abx. Pt has completed his Abx but now awaits surg to be scheduled dc ortho has bleeded pt finger has to be amputated. | |
| INFIRMARY COURSE: | FOLLOW-UP TREATMENT/PLANS: Awaiting surg. to be scheduled for amputation of (L) index finger. Pt can wait in the SHU. |

8/23/94